FLORA, FLORA & MONTAGUE, INC.

V.

MARY BOARD SAUNDERS, ET AL.

Record No. 850471

April 22, 1988

Present: All the Justices

*Evans B. Jessee* for appellant.
*B. K. Cruey* for appellees.

STEPHENSON, J., delivered the opinion of the Court.

The sole issue in this appeal is whether the trial court erred in sustaining a plea of *res judicata.*

In 1984, Flora, Flora & Montague, Inc. (Flora) filed a chancery suit against Mary Board Saunders and others[1] (collectively, Saunders) praying that the court decree conveyance to Flora of certain land and easements at or near Smith Mountain Lake in Franklin County. After an *ore tenus* hearing, the trial court sustained Saunders' plea of *res judicata* and dismissed the cause. Flora appeals.

The facts are undisputed. In 1961, Willis E. Board owned a tract of land containing approximately 200 acres located in Franklin County adjacent to the waters of the Roanoke River. On October 30, 1961, Willis E. Board and Annie L. Board, his wife (collectively, the Boards), Saunders' predecessors in title, entered into an option agreement with John Hatcher Ferguson and John Hatcher Ferguson, Jr. (collectively, the Fergusons), Flora's predecessors in title. Pursuant to the terms of the agreement, the Boards granted the Fergusons a ten-year option to purchase a portion of the Boards' land, containing approximately 100 acres. Shortly before the parties executed the option agreement, Appalachian Power Company had begun construction of Smith Moun-

---

[1] The appellees, in addition to Mary Board Saunders are Lillie Board Brown, Dorothy Board Young, Hazel Board Ferguson, Coy Board, Juanita Board Jones, Lorraine Board Young, Manuel Rowell, Arlene Board Brooks, Arthur Board, Fannie Board, Evelyn Board, William V. Board, Barbara Board, Annette Boyd, Claudette Dillon, Theodore Inge, Virginia Board, Patricia Delores Foster, Harry James Board, John Marshall Board, Dwaine Page Board, Glen Michael Board, Gloria Jean Board, and "Parties Unknown."

tain Dam on the Roanoke River, which created the body of water known as Smith Mountain Lake. The option agreement described the 100-acre tract as "being the acreage running along the high water line of the dam and extending inland through the woods and running down to the river."

The option agreement further provided as follows:

[The Boards] grant to [the Fergusons] the right and privilege of use of all the farm roads on this farm in their development.

. . . .

[The Boards] are to receive in compensation $200.00 per acre for every acre that is sold, with the exception of roadways which are necessary to be run to the various tracts outside of the wooded lands, if it becomes necessary to run a roadway to land that is being sold by [the Fergusons], in order to get to it, then the acreage included in such roadways is not to be paid for by [the Fergusons].

[The Boards] are to receive $200.00 per acre as set out herein above, exclusive of any survey charges, or any charges for roadway, or any attorney fees whatsoever. It is understood that [the Boards] will join in with [the Fergusons] for granting such easements for the construction of necessary roads and public utilities, as might be necessary for the development and sale of this property.

[The Fergusons] shall at all times be responsible for complying with the subdivision ordinances of Franklin County, Virginia, and [the Fergusons] shall save [the Boards] harmless because of any infraction or violation of such ordinances.

Both Willis and Annie Board died shortly after executing the option agreement, and title to the land descended to and vested in Saunders. Before the ten-year option period had expired, the Fergusons notified Saunders that they were exercising the option. Saunders, however, refused to convey the real estate as provided for in the option agreement. Consequently, on July 15, 1971, the Fergusons filed a suit against Saunders for specific performance of the agreement (the first suit). While the first suit was pending, the

Fergusons assigned the option agreement to C. Cecil Flora and others,[2] who were added as complainants.

The amended bill of complaint in the first suit contained, *inter alia*, a general recitation about the option agreement and stated that "[a] copy of [the] Option is attached hereto and made a part hereof." The complainants further averred that they were "entitled to a Deed to the aforementioned property for a consideration of $200.00 per acre as set forth in the Option Contract attached hereto, and made a part hereof," and requested that the court appoint a special commissioner "for the purpose of conveying the . . . real estate, as described in the Option Contract and attached hereto, and made a part hereof." Finally, in the prayer of the bill, the complainants asked the court to "grant specific performance of [their] Contract . . . by appointing . . . a Special Commissioner . . . for the purpose of conveying unto [the Fergusons] the interest of all of the heirs and next of kin of [the Boards]."

In the first suit, the trial court's opinion recited that the suit was for specific performance of the "option contract for sale of 100 acres of land owned by Willis E. Board, *and said rights therewith* to the Fergusons or their assigns." (Emphasis added.) The opinion further stated that the complainants "should be given a deed . . . *in accordance with the option contract.*" (Emphasis added.) The court decreed that "the complainants . . . are entitled to Specific Performance of the contract and option dated October 30, 1961."[3] Thereupon, the court appointed a surveyor to locate and describe the 100-acre tract in accordance with the option agreement and ordered the surveyor to report the results of his survey to the court.

By a subsequent decree in the first suit, the court affirmed the survey as reported and directed a special commissioner to convey Lots 1 and 2 as shown on the plat prepared by the surveyor. The court also directed that Lot 3 on the plat "shall be retained and owned by the heirs of Willis E. Board and Annie L. Board." Pursuant to this decree, the special commissioner conveyed Lots 1 and 2, each being described by metes and bounds, aggregating 100

---

[2] The other assignees were Miriam F. Flora, wife of C. Cecil Flora, Carl B. Flora and Leola B. Flora, his wife, and J. Kyle Montague and Lucy M. Montague, his wife.

[3] In the first suit, the court directed an issue out of chancery in which the jury determined that the option agreement contained the genuine signature of Willis E. Board and that he was mentally competent at the time he signed the agreement.

acres, more or less, to C. Cecil Flora, Carl B. Flora, and J. Kyle Montague.[4]

In the present suit, Flora prays for the following relief:

A. That the court determine the location[,] width and length of all necessary roadway and public utility easements which should be granted by [Saunders] to [Flora] in connection with the development and sale of the property of [Flora], and Order that a Special Commissioner of the court grant such necessary roadway and public utility easements to [Flora], across the residual lands now owned by [Saunders].

B. That the court determine that [Flora] is entitled, pursuant to the option agreement . . . to the use of all the farm roads on the residual land owned by [Saunders].

C. That the court determine that [Flora] is entitled, pursuant to the option agreement . . . to the conveyance from [Saunders] of all land located adjacent to the land of [Flora], below the 800 foot contour of Smith Mountain Lake and out to the original boundary lines of the lands of Willis E. Board, and that a Special Commissioner of the Court be appointed and be directed to make such conveyance to [Flora].

Flora characterizes the option agreement as providing for a number of distinct obligations that are separately enforceable against Saunders. Based on its characterization of the agreement, Flora contends that the first suit is not a *res judicata* bar to the present suit because the first suit involved only the right to have the tract of land conveyed according to the terms of the option agreement. On the other hand, Flora asserts, the present case seeks enforcement of those portions of the agreement concerning roads and rights-of-way. We reject Flora's contentions.

"A valid, personal judgment on the merits . . . bars relitigation of the *same cause of action,* or any part thereof which could have been litigated, between the same parties and their privies." *Bates* v. *Devers*, 214 Va. 667, 670-71, 202 S.E.2d 917, 920-21 (1974) (footnote omitted) (emphasis in original). A claim arising from an indivisible contract cannot be split and made the subject of separate actions, *Hancock* v. *White Hall Co.*, 102 Va. 239,

---

[4] Subsequently, the grantees formed the corporation known as Flora, Flora & Montague, Inc., the appellant herein, and conveyed the subject real estate to the corporation.

242-43, 46 S.E. 288, 289 (1904), but, being a single cause of action, must be litigated in one suit, *Jones* v. *Morris Plan Bank*, 168 Va. 284, 290, 191 S.E. 608, 609 (1937).

> The law does not permit the owner of a single or entire cause of action or an entire or indivisible demand . . . to divide or split that cause or demand so as to make it the subject of several actions. The whole cause must be determined in one action. If suit is brought for a part of a claim, a judgment obtained in that action precludes the plaintiff from bringing a second action for the residue of the claim, notwithstanding the second form of action is not identical with the first, or different grounds for relief are set forth in the second suit. *This principle not only embraces what was actually determined, but also extends to every other matter which the parties might have litigated in the case.*

*Jones*, 168 Va. at 291, 191 S.E. at 610 (emphasis added).

■ The rule against claim-splitting exists to protect a defendant from vexatious and costly litigation resulting from a multiplicity of suits on the same cause of action. *Id.* at 292, 191 S.E. at 610. Indeed, "[n]o one ought to be twice vexed for one and the same cause." *Id.* The principal test to determine whether claims are a part of the same cause of action is whether the same evidence will support both claims. *Brown* v. *Haley*, 233 Va. 210, 216, 355 S.E.2d 563, 567 (1987); *Jones*, 168 Va. at 290-91, 191 S.E. at 609-10; *see also Wright* v. *Castles*, 232 Va. 218, 223-24, 349 S.E.2d 125, 129 (1986); *Bates*, 214 Va. at 672, 202 S.E.2d at 922.

■ Applying these principles to the undisputed facts of the present case, we conclude that Flora could maintain only one suit to compel specific performance of the option agreement. The agreement's subject matter related solely to the sale of a tract of land and necessary appurtenances thereto. Indeed, the first suit was instituted to have the court "grant specific performance of [the] Contract," not a part thereof. Moreover, the option agreement was attached to and made a part of the bill of complaint. The fallacy in Flora's argument is that it seeks to make severable an indivisible contract. Flora had but one cause of action; thus, Flora's claim had to be determined in one suit.

■ Saunders' contractual obligations to convey the rights-of-way "as might be necessary for the development . . . of this prop-

erty" were part and parcel of the option agreement. It is immaterial that the full extent of Saunders' contractual obligations was not litigated and determined in the first suit; the *res judicata* bar "extends to every other matter which the parties might have litigated." *Jones*, 168 Va. at 291, 191 S.E. at 610.

Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*