## CIRCUIT COURT OF WARREN COUNTY

Cherokee Corp. of Linden,
Virginia, Inc., et al.

v.

Jesse L. Richardson, Trustee, et al.

Case No. (Chancery) 95-130

Capital Skiing Corp.

v.

Cherokee Corp. of Linden,
Virginia, Inc., et al.

Case No. (Chancery) 96-34

June 5, 1996

BY JUDGE JOHN E. WETSEL, JR.

These cases came before the Court on May 20, 1996, for argument on the Defendant Capital Skiing Corporation's Plea of *Res Judicata*; Plea in Bar based on the statute of limitations, and Demurrer to the multi-count counterclaim filed by the Defendants. Benjamin M. Butler, Esquire, appeared for Capital Skiing, and Robert B. Patterson, Esquire, appeared for Cherokee. Upon consideration of the argument of counsel and their memo-

randa of authorities, the Court has made the following decision to sustain in part and deny in part Capital Skiing's Plea of *Res Judicata* and Demurrer and to deny Capital Skiing's Plea in Bar based on the statute of limitations as it applies to Cherokee's claims as limited by the court's rulings on the Plea of *Res Judicata* and Demurrer.

## I. *Statement of Material Facts*

The present actions are the culmination of a concatenation of civil actions involving these present parties and their privies. The following facts are established by the pleadings.

Capital Skiing Corporation, hereinafter, Capital Ski, is a Virginia Corporation whose stockholders are Riblet Tramway, Inc., ("Riblet"); Snow Machines, Inc., ("Snow Machines"); Crawford Electronics, Inc., ("Crawford"); and L. F. Franklin & Sons ("Franklin").

Riblet, Snow Machines, Crawford, and Franklin were the four largest mechanic's lienors of a project known as Cherokee Ski Resort in Warren County, Virginia, which was a skiing development undertaken by Cherokee Corporation of Linden, Inc., the Defendant in this action.

Capital Ski was formed by the mechanic's lienors in 1992 as a Virginia Corporation to carry out the provisions of a decree entered by the Circuit Court of Warren County in a case styled *Riblet Tramway Company, Inc. v. Cherokee Corporation, Trustee, et al.*, Chancery No. 90-188, which was a mechanic's lienors' suit filed in the Circuit Court of Warren County.

On June 7, 1991, Cherokee filed a Chapter 11 bankruptcy proceeding in the United States District Court for the Eastern District of Virginia. By the terms of a consent order of March 3, 1992, granting relief from the automatic bankruptcy stay, Cherokee agreed to place a first lien deed of trust on its property to secure the payment due the four mechanic's lienors which comprised the four stockholders of Capital Ski.

On March 26, 1992, Cherokee executed a note and deed of trust in the principal amount of $1,467,165.13, payable to Riblet, Snow Machines, Crawford, and Franklin for its obligations owed to the four mechanic's lienors. This note was then assigned to Capital Ski on July 24, 1992.

Cherokee failed to make the payments due under the note on March 31, 1992, and Capital Ski declared a default and requested the trustee to commence foreclosure under its deed of trust.

On July 28, 1992, Occoquan Land Development Corporation, an entity controlled by the principals of Cherokee and the beneficiary under a land

trust by which Cherokee held title to the property, also filed a Chapter 11 bankruptcy petition.

On August 8, 1992, the United States Bankruptcy Court for the Eastern District of Virginia entered an order providing that, unless Occoquan and Cherokee had sold the property within ninety days, Capital Ski could foreclose on the property under its deed of trust without further notice to Cherokee and Occoquan.

On September 30, 1992, at the request of Cherokee and Occoquan, the bankruptcy court entered an order to hold a public auction directing that a sale of the property take place in the bankruptcy courtroom on November 3, 1992. Only one person appeared to bid, and Cherokee and Occoquan declined that person's bid, so Capital Ski again commenced the foreclosure process.

On November 30, 1992, a foreclosure sale was held, and the trustee sold the property to Capital Ski which was the highest bidder at the foreclosure sale.

On December 11, 1992, Edward Raney, a friend of Eugene Adkins, the principal shareholder of Cherokee, filed suit in the Circuit Court of Warren County, *A. Edward Raney v. Capital Skiing Corporation*, Chancery No. 92-241, in which Raney sought to establish title of the Cherokee resort in himself as opposed to Cherokee and Occoquan. Capital Ski then filed an ejectment action in the Circuit Court of Warren County, *Capital Skiing Corporation v. A. Edward Raney*, Law No. 92-255. The two actions were consolidated for trial and resolved in favor of Capital Ski by the trial court's determining that Cherokee not Raney was the owner of the ski resort. The final decree was entered in both of those causes on November 9, 1993.

On November 30, 1993, Cherokee and Occoquan along with Adkins and others then filed a law action in the Circuit Court of Warren County styled *Cherokee Corporation, Trustee, et al., v. Capital Skiing Corporation et al.*, Law No. 93-228, claiming that the trustee's sale had been improperly conducted and asserting various claims against Capital Ski, and Capital Ski's Plea of *Res Judicata* in this action is based on the final judgment entered in that case.

In its motion for judgment filed in Warren County, Law No. 93-228, Cherokee and Occoquan pleaded claims against Capital Ski for breach of

contract and other rights of actions, and Cherokee specifically alleged as follows:

41. Capital Ski owed Plaintiffs the *duty of good faith* and fair dealing *pursuant to the deed of trust note.*

42. Capital Ski breached its duty by instructing Drown to sell the property with the cloud on the title.

43. Capital Ski's actions were *intentional, wanton, and reckless,* with gross disregard for the interest and rights of the plaintiffs in its fifth claim for relief.

45. By directing Drown [the Trustee] to conduct a sale with the cloud on the title, Capital Ski was able to acquire the property at a fraction of its true value.

46. This action by Capital Ski was in *breach of the deed of trust* and contrary to law.

47. By acquiring the property wrongfully for a grossly inadequate price and far less than its true worth, and *by colluding* to prevent the highest price from being obtained for the property, Capital Ski was *unjustly enriched* to the detriment of the Plaintiffs.

48. By reason of the foregoing, Plaintiffs suffered damages in the amount of $8,200,000.00 or such other amount as may be proved at trial.

(Emphasis added.)

The Circuit of Warren County bifurcated the law action, 93-228 into a chancery issue (Warren Chancery No. 94-172) on the objections to the trustee's actions in foreclosing the property, and a law action (Warren Law No. 93-228) on Cherokee's various damage actions against Capital Ski and the other defendants.

On January 20, 1995, the Circuit Court of Warren County, Virginia decreed, in Warren County Chancery No. 94-172, that the "conveyance of Capital Ski Corporation by reason of the foreclosure sale on November 30, 1992, be and it hereby is declared void, and title of said property shall revert to Cherokee of Linden, Virginia, Inc., with authority of the substitute trustee to re-advertize and conduct another foreclosure sale if the note holder under the deed of trust is still in default." The Honorable Judge

Paul M. Peatross, Jr., issued a nine page written opinion incident to his ruling. (Plaintiff's Exhibit # 6A.)

On March 25, 1995, a further attempt to foreclose was made by Capital Ski, and the substitute trustee scheduled the sale for April 18, 1995, at the Warren County Courthouse.

On April 12, 1995, Cherokee filed a motion for preliminary injunction against the substitute trustee and Capital Ski in the Circuit Court of Fauquier County, and the Circuit Court of Fauquier County issued a temporary injunction. On April 28, 1995, the Fauquier County Circuit Court granted Capital Ski's motion for a change of venue transferring the case to the Circuit Court of Warren County, and that action is Warren County Chancery No. 95-130, which is one of the two cases now before the court.

On July 6, 1995, Cherokee filed yet another action in the United States District Court for the Eastern District of Virginia, *Cherokee Corporation of Linden, Virginia, Inc. v. Riblet Tramway Company et al.*, civil action number 95-923-A. In this federal action, Cherokee asserted the following claims against Capital Ski and its four shareholders.

a. (Count I) Unlawful entry and detainer.

b. (Count V) Conversion.

c. (Count VI) Unjust enrichment.

d. (Count VII) Statutory conspiracy.

e. (Count VIII) Tortious interference with prospective business advantage and business relationships; and

f. (Count IX) Breach of contract.

Cherokee's federal complaint was dismissed on October 20, 1995, for lack of jurisdiction.

On November 21, 1995, counsel for Defendant Chicago Title Insurance Company wrote Judge Peatross a letter in which he stated:

> This is to suggest that the matters remaining on the law side of the Court have become moot (as a result of the foreclosure sale being declared void, and the title to the property reverting to Cherokee), and, therefore, the case should be dismissed.
>
> Cherokee Corporation's motion for judgment sought inconsistent equitable and legal remedies. Cherokee's equitable claim was to satisfy the foreclosure sale of the Cherokee Ski Resort.

Cherokee's legal claim sought damages for the loss of the ski resort.

This Court transferred Cherokee's equitable claim to the chancery side of the court, conducted a trial, and entered an order setting aside the foreclosure sale. The parties to the chancery suit each petitioned the Supreme Court for an appeal, but the Supreme Court denied those petitions. The result of these rulings was that Cherokee *now has title to* the ski resorts.

Having recovered the ski resort, Cherokee has no damage claim against Chicago Title for loss of the ski resort. For this reason, Chicago Title requests a final order dismissing the action at law.

Alternatively, if the Court does not agree that the action at law is moot, Chicago Title respectfully requests a ruling on its demurrer to Cherokee's amended motion for judgment. The demurrer was argued prior to the trial of the chancery suit, but the Court has not ruled on the demurrer.

In response to the letter of November 21, 1995, Judge Peatross wrote all counsel in the case, including Robert B. Patterson, present counsel for Cherokee, and Benjamin M. Butler, present counsel for the Plaintiffs, in which he stated:

I acknowledge receipt of your letter [counsel for Chicago Title] dated November 21, 1995.

If my ruling setting aside the foreclosure sale is final, I agree with you that it is appropriate for the Court to enter a final order dismissing the action at law. However, by copy of this letter to other counsel, I am directing them to advise me whether or not they agree with your position.

In the alternative, if they disagree with your position, I will either schedule a hearing or rule on the demurrer which was argued before me in December of 1994.

Counsel for Cherokee did not respond to Judge Peatross' letter of November 28, 1995, and on January 25, 1996, Judge Peatross entered a final order dismissing Warren Law No. 93-228, *Cherokee v. Chicago Title and Capital Ski et al.*, which included Cherokee's damage actions against Capital Ski. This final order provided:

It appearing that the Plaintiff [Cherokee] has not responded to the Court's letter, dated November 28, 1995, wherein the Court asked all parties to state their position on Chicago Title's suggestion that this action should be dismissed as moot; and

It appearing that all the parties except the Plaintiffs have consented to this order, as evidenced by the signature of the undersigned counsel; and

It appearing that counsel for Chicago Title gave Plaintiffs' counsel [Robert B. Patterson] proper notice that the order would be presented for entry on January 25, 1996, at 1:00 p.m., that Plaintiffs' counsel did not appear at that date and time to oppose the entry of this order; and

It appearing to the Court that this case is moot;

It is therefore ordered that this cause shall be and hereby is dismissed. Endorsement of counsel for the Plaintiff is dispensed with. This cause is final.

Cherokee did not appeal Judge Peatross' order of January 25, 1996.

On March 7, 1996, Capital Ski filed its present Bill of Complaint for Declaratory Judgment (Chancery No. 96-34) in which it asked this Court to determine that Cherokee was in default of the March 26, 1992, note and deed of trust, to establish the amount of indebtedness owed by Cherokee to Capital Ski, and to order that Capital Ski's foreclosure could proceed.

In response to the Bill of Complaint, Cherokee filed an Answer and Counterclaim. In its Counterclaim, Cherokee pleaded the following actions:

a. Unlawful detainer.

b. Constructive trust/breach of fiduciary duty/knowing participation in a breach of trust.

c. Negligence, gross negligence, recklessness.

d. Unjust enrichment.

e. Statutory conspiracy pursuant to Virginia Code §§ 18.2-499, 18.2-500/civil conspiracy.

f. Tortious interference with respect to business advantage/tortious and intentional interference with business relations.

g. Breach of contract/tortious breach of contract.

By virtue of these claims, Cherokee is asserting damage actions against Capital Ski for its actions in the period beginning February 1992 through the present time.

Capital Ski has filed a plea of *res judicata*, plea in bar, and demurrer to Cherokee's counterclaims.

On May 20, 1996, Chancery No. 96-34 was transferred to the law docket of the court and set for trial before a jury on the issues as refined by the court's rulings on Capital Ski's Pleas and Demurrer.

## II. *Conclusions of Law*

### 1. *Plea of Res Judicata*

#### A. *Final Judgment*

The first requirement for the application of the doctrine of *res judicata* is a former, final judgment on the merits. In *Storm v. Nationwide Ins. Co.*, 199 Va. 130, 133-134, 97 S.E.2d 759, 761 (1957), the Supreme Court discussed the requisite nature of the former judgment relied upon as *res judicata:*

> "A judgment on the merits, fairly rendered, by a court of competent jurisdiction, having cognizance both of the parties and the subject matter, however erroneous it may be, is conclusive on the parties and their privies until reversed or set aside in a direct proceeding for that purpose and is not amenable to collateral attack." 8 M.J., *Former Adjudication*, § 10, p. 581.

> "A judgment is not res adjudicata if it does not go to the merits of the case. To constitute a bar, it must appear either upon the face of the record or be shown by extrinsic evidence that the previous question was raised and determined in the former suit, and that the former suit was determined on its merits." 8 M.J., *Former Adjudication*, § 12, p. 584.

> "A judgment is on the merits when it amounts to a decision as to the respective rights and liabilities of the parties, based on the ultimate fact or state of facts disclosed by the pleadings or evidence, or both, and on which the right of recovery depends, irrespective of formal, technical, or dilatory objections or contentions." 50 C.J.S., *Judgments*, § 627, p. 52.

> "The true test of the conclusiveness of a former judgment with respect to particular matters is identity of issues. If a particular point or question is in issue in the second action, and the judgment will depend on the determination of the particular point or question, a former judgment between the same parties will be final and conclusive in the second if that same point was

in issue and adjudicated in the first suit . . . ." 50 C.J.S., *Judg-ments*, § 719, p. 198; 30 Am. Jur., *Judgments*, § 172, p. 914.

The issue decided in the former action must have been identical with the issue presented in the second action, and the party now sought to be barred by the plea must have been the same party or one in privity with the party against whom the judgment was rendered. *Patterson v. Anderson*, 194 Va. 557, 74 S.E.2d 195 (1953).

The Final Order entered by Judge Peatross on January 25, 1996, in *Cherokee v. Chicago Title et al.*, Warren County Law 93-228, which included Cherokee's various damage claims against Capital Ski of breach of contract, unjust enrichment, and intentional, wanton, and reckless disregard of Cherokee's rights under the note and deed of trust, specifically provided that:

It appearing that the Plaintiff [Cherokee] has not responded to the Court's letter, dated November 28, 1995, wherein the Court asked all parties to state their position on Chicago Title's suggestion that this action should be dismissed as moot; and

It appearing that all the parties except the Plaintiffs have consented to this order, as evidenced by the signature of the undersigned counsel; and

It appearing that counsel for Chicago Title gave Plaintiffs' counsel [Robert B. Patterson] proper notice that the order would be presented for entry on January 25, 1996, at 1:00 p.m., that Plaintiffs' counsel did not appear at that date and time to oppose the entry of this order; and

*It appearing to the Court that this case is moot*;

It is therefore ordered that this cause shall be and hereby is dismissed. Endorsement of counsel for the Plaintiff is dispensed with. This cause is final. [Emphasis added.]

This was a final order, and the finding that "this case is moot" is a final decision on the merits.

A case is moot when, upon "the termination of the circumstances out of which a controversy arose . . . an adjudication upon the merits could serve no useful purpose beyond the gratification of a litigious party's will to win." Note, "Moot" Administrative Orders, 53 Harv. L. Rev. 628 (1940). " 'The duty of this

court as to every other judicial tribunal, is *to decide actual controversies by a judgment which can be carried in effect*, and not to give opinions upon moot questions or abstract propositions, or to declare principals or rules of law which cannot affect the matter in issue in the case before it'." *Potts v. Mathieson Alkali Works*, 165 Va. 196, 225, 181 S.E. 521, 533 (1935) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)) (emphasis added).

*State Water Control Bd. v. Appalachian Power Co.*, 12 Va. App. 73, 77, 402 S.E.2d 703 (1991). The effect of this final order was that there was no longer a justiciable controversy between Cherokee and Capital Ski regarding the events leading up to and culminating in the November 30, 1992, foreclosure sale. Whether the issues between Cherokee and Capital Ski were truly moot is of no moment, because Judge Peatross decided that they were, and his decision is now final.

### B. *Scope of Res Judicata*

In *Bates v. Devers*, 214 Va. 667, 670-671, 202 S.E.2d 917 (1974), the Supreme Court of Virginia discussed the distinction between *res judicata* and the kindred, though narrower, doctrine of collateral estoppel:

> *Res judicata-bar*, is the particular preclusive effect commonly meant by the use of the term "res judicata." A valid, personal judgment on the merits in favor of a defendant bars relitigation of the *same cause of action*, or any part thereof which could have been litigated, between the same parties and their privies. *See* Restatement of Judgments §§ 47, 62, 83 (1942).
>
> *Collateral estoppel* is the preclusive effect impacting in a subsequent action based upon a collateral and *different cause of action.* In the subsequent action, the parties to the first action and their privies are precluded from litigating any *issue* of fact actually litigated and essential to a valid and final personal judgment in the first action. *See* Restatement of Judgments §§ 68, 82 (1942).

The dimensions of the "claim" for purposes of the application of the bar of *res judicata* are well defined in the Restatement of Judgments 2d § 24:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger and bar (see §§ 18, 19), the claim extinguished includes all

rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Accord, Bates v. Devers,* 214 Va. 667, 672, n. 8. The comment in the Restatement to this section goes on to note that:

The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights.

In order to understand the application of the doctrine of *res judicata*, it is necessary to understand precisely what the term "cause of action" means, because that is the broad transactional concept underlying the application of the doctrine of *res judicata*. The Supreme Court of Virginia recently had occasion to discuss the concept of cause of action in *Trout v. Commonwealth Transp. Commissioner*, 241 Va. 69, 73, 400 S.E.2d 172 (1991):

An "action" and a "cause of action" are quite different. "Action" is defined by Code § 8.01-2, as noted above. We define "cause of action" in *Roller v. Basic Construction Co.*, 238 Va. 321, 327, 384 S.E.2d 323, 326 (1989), as "a set of operative facts which under the substantive law, may give rise to a right of action."

As can be seen, Virginia follows the transaction rule set forth in the Restatement of Judgments 2d, § 24, for purposes of defining "cause of action." The importance of understanding the broad concept of "cause of action" is essential to understanding the application of *res judicata*. One "cause of action" may give rise to myriad rights of action, e.g., breach of

contract, breach of warranty, negligence, and statutory claims; however, if the rights of action arise from the same operative set of facts and could legally be asserted therein, they are all the same "cause of action" for purposes of the application of the doctrine of *res judicata*. "There can be no right of action until there is a cause of action." *Stone v. Ethan Alan*, 232 Va. 365, 368-369, 350 S.E.2d 629 (1986), *citing Caudill v. Wise Rambler*, 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969). However, as broad as the application of the doctrine of *res judicata* is, it applies only to rights of action which have accrued from the cause of action and could have been asserted in the proceeding upon which the plea is based. As the Supreme Court of Virginia noted in *Southern R. Co. v. Wash. & C. R. Co.*, 102 Va. 483, 491, 46 S.E. 784 (1904):

> *[R]es judicata* applies, except in special cases, not only to points upon which the court was actually required, by the parties, to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of the litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time. *Diamond State Iron Co. v. Rarig & Co.*, 93 Va. 603, 25 S.E. 894, and authorities cited. But it cannot be applied to a matter not adjudicated in a former action and which could not have been brought forward for adjudication upon the pleadings in the cause; nor to a matter arising after the former adjudication, even in a second suit between the parties to the former or their privies, if the causes of action are not the same. [Cites omitted.]

The principle that *res judicata* applies not only to issues actually litigated but those which could have potentially been litigated is what distinguishes the broader doctrine of *res judicata* from the more narrow doctrine of collateral estoppel, which applies only to matters actually litigated. *See Dual & Associates v. Wells*, 241 Va. 542, 545-546, 403 S.E.2d 354 (1991). A party may join contract and tort claims or rights of action in the same legal action. Virginia Code § 8.01-272. However, while such joinder is not mandatory, if a claim or right of action is pursued to final judgment, that judgment may be asserted by either party as *res judicata* in any right of action arising out of the earlier cause of action or transaction. When remedies or rights of action arising from the same cause of action are concurrent, by pursuing one right of action to judgment the plaintiff has made a binding election of remedy, and he is bound by the result. *Pollard v.*

*Thalhimer*, 169 Va. 529, 536, 194 S.E. 701 (1938). This principle is the one upon which Judge Peatross apparently relied on in dismissing the pendant damage actions as moot, after he had declared that the foreclosure sale was void and that the possession of the property reverted to Cherokee.

## C. *Earlier Action Was on the Same Side of the Court*

There is an exception to the broad rule given to *res judicata*, which derives from the fact that Virginia still preserves the distinction between law and equity, and an earlier chancery action will not bar subsequent law actions deriving from the same cause of action. In *Ware v. Smith*, 244 Va. 374, 376, 421 S.E.2d 444 (1992), the Supreme Court ruled that a widow's earlier unlawful detainer law action which had been dismissed, because the statute of limitations had run, did not bar her later chancery suit for commutation of her dower interest in the same property, and the Court reviewed the necessary elements of a successful plea of *res judicata*:

> The bar of *res judicata* precludes relitigation of the same cause of action, or any part thereof, which could have been litigated between the same parties and their privies. *Bates v. Devers*, 214 Va. 667, 670-71, 202 S.E.2d 917, 920-21 (1974). *See also Flora, Flora & Montague, Inc. v. Saunders*, 235 Va. 306, 310, 367 S.E.2d 493, 495 (1988); *Brown v. Haley*, 233 Va. 210, 215, 355 S.E.2d 563, 567 (1987); and *Worrie v. Boze*, 198 Va. 533, 537-38, 95 S.E.2d 192, 196-97 (1956), *aff'd on reh'g*, 198 Va. 891, 96 S.E.2d 799 (1957). Four elements must be present before *res judicata* can be asserted to bar a subsequent proceeding: "(1) identity of the remedies sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of the persons for or against whom the claim is made." *Wright v. Castles*, 232 Va. 218, 222, 349 S.E.2d 125, 128 (1986). *See also Mowry v. City of Virginia Beach*, 198 Va. 205, 211, 93 S.E.2d 323, 327 (1956).
>
> We hold that the trial court erred in applying the doctrine of *res judicata* and dismissing Mrs. Smith's bill of complaint because there is neither an identity of the remedies sought nor an identity of the causes of action. *See Wright*, 232 Va. at 222, 349 S.E.2d at 128.

At first brush this case appears to be a retrenchment in the scope of the doctrine of *res judicata* by its addition of the requirement of "identity of

remedies," because if remedy were synonymous with "right of action," the implication is that the aggrieved party, confronted with a judgment for the defendant, may simply successively file actions based on different remedies or rights of action until he receives a favorable verdict. If this were true, the doctrine of *res judicata* would be substantially emasculated.

*Black's Law Dictionary* (5th ed. 1979) defines remedy as "the rights given to a party by law or by contract which that party may exercise upon a default by the other party, or upon the commission of a wrong (a tort) by another party," so remedy in this context is actually consonant with the broader concept of "cause of action." Moreover, the Supreme Court in *Ware v. Smith, supra*, noted that the causes of action were different and relied upon *Bates v. Devers*, 214 Va. 667, 670-71, 202 S.E.2d 917, 920-21 (1974), which clearly held:

> *Res judicata-bar*, is the particular preclusive effect commonly meant by the use of the term "res judicata." A valid, personal judgment on the merits in favor of a defendant bars relitigation of the *same cause of action*, or any part thereof which could have been litigated, between the same parties and their privies. *See* Restatement of Judgments §§ 47, 62, 83 (1942).
>
> *Collateral estoppel* is the preclusive effect impacting in a subsequent action based upon a collateral and *different cause of action*.

The ostensibly inconsistent rule of this case derives from the fact that Virginia still recognizes a distinction between law and equity, and this legal relic affects the court's *res judicata* decisions. In *Ware v. Smith, supra*; *Brown v. Haley*, 233 Va. 210, 219, 355 S.E.2d 563 (1987) (equitable claim for easement arose from different transaction and could not be asserted in earlier ejectment action at law between the same parties); and *Wright v. Castles*, 232 Va. 218, 349 S.E.2d 125 (prior chancery suit for injunction does not bar later suit for monetary damages, the court was confronted by later cases being filed on a different side of the court, because of the dichotomy between law and equity. The rule in such cases, as the Supreme Court noted in *Wright v. Castles, supra*, at 222, is:

> Moreover, a chancery suit is not *res judicata* to a subsequent law action unless the very matter in controversy in the pending action was decided in the prior suit. *Pleasants v. Clements*, 29 Va. (2 Leigh) 474 (1831) (a chancery proceeding to rescind a contract does not bar a subsequent law action to recover damages

for breach of warranty on the same contract)). For *res judicata* purposes (where the first action is in chancery and the second is in law), four elements must concur: (1) identity of the remedies sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of the persons for or against whom the claim is made.

However, in the case at bar, Judge Peatross had transferred Cherokee's damage actions to the law docket of the court for resolution, Warren Law No. 93-228, so the more narrow rule of *res judicata* based on the second case being on a different side of the court does not apply in this case to the damage actions again asserted by Cherokee.

In its counterclaim, Cherokee asserts rights of action based on Cherokee's actions preceding and culminating in the foreclosure sale of November 30, 1992, and all of those rights of action are barred by the doctrine of *res judicata* as a result of the Final Order entered in Warren Law No. 93-228. The barred actions are as follows.

Count B: *Constructive Trust/Breach of Fiduciary Duty/Knowing Participation in a Breach of Trust.* The Plea of *Res Judicata* is sustained, *except* to the extent that such right of action is based on breaches of fiduciary duty occurring after the November 30, 1992, Trustee's sale. Since the property has reverted to Cherokee, there is no constructive trust right of action.

Count C: *Negligence, Gross Negligence, Recklessness.* The Plea of *Res Judicata* is sustained, *except* to the extent that such right of action is based on incidents after the November 30, 1992, Trustee's sale.

Count E: *Unjust Enrichment.* The Plea of *Res Judicata* is sustained, *except* to the extent that such right of action is based on incidents after the November 30, 1992, Trustee's sale.

Count F: *Statutory Conspiracy Pursuant to Virginia Code §§ 18.2-499 and 18.2-500/Civil Conspiracy.* The Plea of *Res Judicata* is sustained.

Count G: *Tortious Interference with Prospective Business Advantage/Tortious and Intentional Interference with Business Relationships.* The Plea of *Res Judicata* is sustained, *except* to the extent that such right of action is based on incidents after the November 30, 1992, Trustee's sale.

Count H: *Breach of Contract/Tortious Breach of Contract.* The Plea of *Res Judicata* is sustained, *except* to the extent that such right of action is based on incidents after the November 30, 1992, Trustee's sale.

## 2. *Demurrer*

In considering a demurrer, the Court must apply "the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Russo v. White*, 241 Va. 23, 24, 400 S.E.2d 160 (1991), quoting *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373 (1988). In all cases except negligence cases, in ruling on a demurrer, "the court is not bound by . . . conclusory [legal] allegations when the issue involves . . . a mixed question of law and fact." *Russo v. White, supra* at 28. There is an exception for negligence cases, because the Rules of Court specifically provide that "an allegation of negligence . . . is sufficient without specifying the particulars of the negligence. On motion made promptly, a bill of particulars may be ordered to amplify any pleading that does not, in the opinion of the Court, comply with this rule." Supreme Court Rule 3:16(b). *See also CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993).

Capital Ski demurred to Counts B, C, E, F, G, and H of Cherokee's Counterclaim.

Count B: *Constructive Trust/Breach of Fiduciary Duty/Knowing Participation in a Breach of Trust.* The Demurrer is overruled as to this count.

Count C: *Negligence, Gross Negligence, Recklessness.* The Demurrer is overruled as to separate, independent torts based on property damage incidents occurring after November 30, 1996.

Count E: *Unjust Enrichment.* The Demurrer is overruled as to this count.

Count F: *Statutory Conspiracy Pursuant to Virginia Code §§ 18.2-499 and 18.2-500/Civil Conspiracy.* The Plea of *Res Judicata* was sustained as to this Count, and the Demurrer is also sustained as to this count. While generally the issue of whether there was a conspiracy is a jury issue, *Commercial Business Systems v. BellSouth*, 249 Va. 39, 47, 453 S.E.2d 261 (1995), a corporation may not conspire with its shareholders and be liable under Virginia Code § 18.2-499. *See Saliba v. Exxon Corp.*, 865 F. Supp. 306, 313 (W.D. Va. 1994); and *Selman v. American Sports Underwriters, Inc.*, 697 F. Supp. 225, 238 (W.D. Va. 1988).

Count G: *Tortious Interference with Prospective Business Advantage/Tortious and Intentional Interference with Business Relationships.* In *Krantz v. Air Line Pilots Assoc.*, 245 Va. 202, 205-206, 427 S.E.2d 326 (1993), the Supreme Court set forth the elements of a viable tortious interference with a contractual relationship right of action:

(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

None of these elements have been even skeletally averred in the counterclaim. *See also Duggin v. Adams*, 234 Va. 221, 226, 360 S.E.2d 832 (1987) (specific factual allegations as to the contract interfered with). The Demurrer is sustained as to this count.

Count H: *Breach of Contract/Tortious Breach of Contract.* The Demurrer is overruled as to this count as it has been limited by the Court's ruling on the plea in bar to actions arising after November 30, 1992.

### 3. *Plea of the Statute of Limitations*

The application of the statute of limitations to Cherokee's various actions is affected by the myriad rights of action asserted in the earlier actions. The Federal District Court action filed July 6, 1995, is the first time that Cherokee's rights of actions against Capital Ski based on events after November 30, 1992, appear. That federal complaint was dismissed on October 20, 1995, which means that it was pending for three months and fifteen days. On March 6, 1996, Capital Ski filed its complaint in this action to which Cherokee filed its counterclaim, and the filing of the counterclaim is deemed to relate back to the filing of the suit. Additionally, if the three months and fifteen days that the federal action was pending is added to Cherokee's time, *see* Virginia Code § 8.01-229(E), this takes the filing date for Cherokee's post November 30, 1992, claims back to November 20, 1995, at the earliest.

It is now necessary to examine the statute of limitations as it applies to each of Cherokee's remaining claims to which Capital Ski has filed its Plea in Bar based on the statute of limitations. The Court's rulings are as follows.

Count B: *Constructive Trust.* The Plea of *Res Judicata* was previously sustained to this right of action.

Count C: *Negligence, Gross Negligence, Recklessness.* The Plea of the Statute of Limitation is overruled to the extent that such right of action is based on incidents after November 30, 1992 (Virginia Code § 8.01-243(B) five year statute of limitations).

Count E: *Unjust Enrichment.* The Plea of the Statute of Limitation is overruled, because this action has been limited to incidents after the November 30, 1992, Trustee's sale (three year statute of limitations). Virginia Code § 8.01-246(3).

Count G: *Tortious Interference with Prospective Business Advantage/Tortious and Intentional Interference with Business Relationships.* The Demurrer was sustained to this count.

Count H: *Breach of Contract/Tortious Breach of Contract.* The Plea of the Statute of Limitations is overruled as to actions accruing after November 30, 1992.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

Capital Ski's Plea of *Res Judicata* is sustained in part and overruled in part as to the following counts of Cherokee's Counterclaim:

Count B: *Constructive Trust/Breach of Fiduciary Duty/Knowing Participation in a Breach of Trust.* The Plea of *Res Judicata* is sustained, *except* to the extent that such right of action is based on breaches of fiduciary duty occurring after the November 30, 1992, Trustee's sale. Since the property has reverted to Cherokee, there is no constructive trust right of action.

Count C: *Negligence, Gross Negligence, Recklessness.* The Plea of *Res Judicata* is sustained, *except* to the extent that such right of action is based on incidents after the November 30, 1992, Trustee's sale.

Count E: *Unjust Enrichment.* The Plea of *Res Judicata* is sustained, *except* to the extent that such right of action is based on incidents after the November 30, 1992, Trustee's sale.

Count F: *Statutory Conspiracy Pursuant to Virginia Code §§ 18.2-499 and 18.2-500/Civil Conspiracy.* The Plea of *Res Judicata* is sustained.

Count G: *Tortious Interference with Prospective Business Advantage/Tortious and Intentional Interference with Business Relationships.* The Plea of *Res Judicata* is sustained, *except* to the extent that such right of action is based on incidents after the November 30, 1992, Trustee's sale.

Count H: *Breach of Contract/Tortious Breach of Contract.* The Plea of *Res Judicata* is sustained, *except* to the extent that such right of action is based on incidents after the November 30, 1992, Trustee's sale.

Capital Ski's Demurrer is sustained in part and overruled in part as to the following counts of Cherokee's Counterclaim:

Count B: *Constructive Trust/Breach of Fiduciary Duty/Knowing Participation in a Breach of Trust.* The Demurrer is overruled as to this count.

Count C: *Negligence, Gross Negligence, Recklessness.* The Demurrer is overruled as to independent torts based on incidents occurring after November 30, 1996.

Count E: *Unjust Enrichment.* The Demurrer is overruled as to this count.

Count F: *Statutory Conspiracy Pursuant to Virginia Code §§ 18.2-499 and 18.2-500/Civil Conspiracy.* The Demurrer is sustained as to this count.

Count G: *Tortious Interference with Prospective Business Advantage/Tortious and Intentional Interference with Business Relationships.* The Demurrer is sustained as to this count.

Count H: *Breach of Contract/Tortious Breach of Contract.* The Demurrer is overruled as to this count as it has been limited by the Court's ruling on the plea in bar to actions arising after November 30, 1992.

Capital Ski's Plea in Bar based on the Statute of Limitations is overruled as follows:

Count B: *Constructive Trust.* The Plea of *Res Judicata* was previously sustained to this right of action.

Count C: *Negligence, Gross Negligence, Recklessness.* The Plea of the Statute of Limitation is overruled to the extent that such right of action is based on incidents after November 30, 1992 (Virginia Code § 8.01-243(B) five year statute of limitations).

Count E: *Unjust Enrichment.* The Plea of the Statute of Limitation is overruled, because this action has been limited to incidents after the November 30, 1992, Trustee's sale (three year statute of limitations). Virginia Code § 8.01-246(3).

Count G: *Tortious Interference with Prospective Business Advantage/Tortious and Intentional Interference with Business Relationships.* The Demurrer was sustained to this count.

Count H: *Breach of Contract/Tortious Breach of Contract.* The Plea of the Statute of Limitations is overruled as to actions accruing after November 30, 1992.