MICHAEL, Circuit Judge,
dissenting:
As the majority recognizes, “the doctrine of election of remedies is not favored.” Ante at 146. Moreover, if a final judgment has been entered in the prior case, the doctrine is of little use because claim preclusion principles work better in determining whether a new claim is barred. I would therefore apply res judi-cata principles to decide whether Artis’s subsequent longshoremen’s claim is precluded. Because the later claim is not barred by res judicata, I must respectfully dissent.
I.
Federal courts from way back have taken a dim view of the election of remedies doctrine. See Friederichsen v. Renard, 247 U.S. 207, 213, 38 S.Ct. 450, 62 L.Ed. 1075 (1918) (“At best this doctrine of election of remedies is a harsh, and now largely obsolete rule, the scope of which should not be extended-”). Our own court has refused to apply the doctrine in cases involving claims under the very statute before us today, the Longshore and Harbor Workers’ Compensation Act (LHWCA). In Newport News Shipbuilding and Dry Dock Company v. Director, OWCP, 583 F.2d 1273, 1277 (4th Cir.1978), we noted that “courts have been reluctant to extend this relatively harsh doctrine.” We went on to hold that an election of remedies defense would not bar a LHWCA claim brought by a welder who had earlier sought (and been denied) relief under a state workers’ compensation statute. Id. at 1277. We have also declined to use the doctrine to bar a FELA claim brought by a worker who had already been awarded LHWCA benefits. See Freeman v. Norfolk and Western Ry. Co., 596 F.2d 1205, 1208 (4th Cir.1979) (holding that plaintiffs “acceptance of LHWCA benefits did not constitute, as a matter of law, a binding election of remedies which would bar a subsequent recovery under FELA”).
The election of remedies doctrine is especially unsuitable when a second claim can be analyzed under claim preclusion principles. Once a final judgment is entered, the doctrine is “usually superfluous ... because the doctrines of claim preclusion and issue preclusion can and should determine the viability of any claims seek *147 ing additional remedies.” 18 James Wm. Moore et al., Moore’s Federal Practice § 131.13[5][c] (3d ed.1999). See also 18 Charles Alan Wright et al., Federal Practice & Procedure § 4476, at 773 (1981) (“Whatever utility it may retain in other areas, election of remedies reasoning has become useless and potentially dangerous in dealing with preclusion by judgment.”). Accordingly, we have refused to apply the election of remedies doctrine in a Title VII case where the plaintiff had previously obtained a favorable state administrative decision that was not appealed. We applied res judicata principles instead. See Dionne v. Mayor and City Council, 40 F.3d 677, 681 (4th Cir.1994) (citing with approval 18 Wright et al., supra, § 4476, at 773 (“[T]he election label has traditionally been used to explain decisions that today seem better explained in terms of claim preclusion.”)); see also Haphey v. Linn County, 953 F.2d 549, 552 (9th Cir.1992) (en banc).
Here, after Artis hurt his back at work, he brought a FELA claim against his employer (the railroad) in state court, settled the case, and consented to the entry of a dismissal order, which amounted to a final judgment. Later, after the law changed, Artis filed a LHWCA claim against the railroad based on the same injury. In these circumstances, res judicata principles, not the election of remedies doctrine, should determine whether the second claim is barred.[1] I now turn to the res judicata analysis.
II.
The Full Faith and Credit Statute, 28 U.S.C. § 1738, directs a federal court to follow state preclusion law to determine the res judicata effect of a state court judgment even when the federal court has exclusive jurisdiction over the subsequent suit. See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380-82, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). Because Artis’s FELA claim was brought and disposed of in Virginia state court, we look to Virginia’s res judicata doctrine. Under Virginia law res judicata bars a claim if all of four elements are present: “ ‘(1) identity of the remedies sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of the persons for or against whom the claim is made.’ ” Smith v. Ware, 244 Va. 374, 421 S.E.2d 444, 445 (Va.1992) (quoting Wright v. Castles, 232 Va. 218, 349 S.E.2d 125, 128 (Va.1986)).
Because the causes of action under FELA and the LHWCA are not identical, res judicata does not bar Artis’s second (LHWCA) claim. In Virginia “[t]he principle test to determine whether claims are part of the same cause of action is whether the same evidence will support both claims.” Flora, Flora & Montague, Inc. v. Saunders, 235 Va. 306, 367 S.E.2d 493, 495 (Va.1988). Unless “the same evidence is necessary to prove each claim,” the causes of action are distinct. Brown v. Haley, 233 Va. 210, 355 S.E.2d 563, 567 (Va.1987). While a worker must prove employer negligence under FELA, no such proof is required for a claim under the LHWCA, which is a no-fault workers’ compensation system. See 45 U.S.C. § 51; 33 U.S.C. § 903. Because there are some fundamental differences in the evidence required to prove these two claims, the prior judgment on Artis’s FELA claim is not res judicata as to his LHWCA claim.
Nor does the doctrine of judicial estop-pel bar Artis’s second claim. “The ‘determinative factor’ in the application of judicial estoppel is whether the party who is alleged to be estopped ‘intentionally misled *148 the court to gain unfair advantage.’” John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 29 (4th Cir.1995) (quoting Tenneco Chemicals, Inc. v. William T. Burnett & Co., 691 F.2d 658, 665 (4th Cir.1982)). When Artis brought his FELA suit in Virginia state court, the case law established that he was not entitled to assert a claim under the LHWCA. As a result, he could not have intended to mislead the Virginia court in any way.
Furthermore, section 5 of the LHWCA does not affect my conclusion that Artis’s LHWCA claim is viable. That section provides that the LHWCA is meant to be a worker’s exclusive remedy. See 33 U.S.C. § 905(a); Chesapeake & Ohio Ry. Co. v. Schwalb, 493 U.S. 40, 42, 110 S.Ct. 381, 107 L.Ed.2d 278 (1989). As the Supreme Court has recognized, however, the purpose of this section is to circumscribe an employer’s liability. See Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 129, 76 S.Ct. 232, 100 L.Ed. 133 (1956) (“The obvious purpose of this provision is to make the statutory liability of an employer to contribute to its employee’s compensation the exclusive liability of such employer to its employee ....”) (emphasis omitted). The ALJ was faithful to this purpose by granting the railroad a credit for benefits paid to Artis in the FELA settlement, and I would do the same.
I would authorize a credit to the railroad based on the following reasoning of the Benefits Review Board in Jenkins v. Norfolk & Western Railway Company, 1996 WL 582388 (DOL Ben. Rev. Bd.1996), a case in which an employee’s FELA settlement was subtracted from his LHWCA award:
The Longshore Act contains various offset or credit provisions which prevent employees from receiving a double recovery for the same injury, disability or death. See 33 U.S.C. §§ 903(e), 914(j), 933(f); see also Lawson v. Standard Dredging Co., 134 F.2d 771 (5th Cir.1943). Although the settlement recovery under the FELA in this case does not fall within the explicit terms of any of these sections, they nonetheless provide guidance in this case. Section 3(e) provides [an] employer with a credit for payments under other workers’ compensation laws or the Jones Act, and Section 33(f) provides an offset for recovery from a third party who is liable in damages for an employment-related disability or death. Section 14(j) covers the advance payment of benefits pursuant to the Longshore Act. See, [e.g.], Mason v. Baltimore Stevedoring Co., 22 BRBS 413 (1989). In addition, an independent credit doctrine exists in case law that provides [an] employer with a credit for prior disability payments under certain circumstances to avoid a double recovery of compensation for the same disability. See Strachan Shipping Co. v. Nash, 782 F.2d 513, 518 (5th Cir.1986) (en banc); Adams v. Parr Richmond Terminal Co., 2 BRBS 303 (1975).
Jenkins, 1996 WL 582388, at *2. Here, with a credit, the railroad is no worse off than it would have been if Artis had been able to bring his claim under the LHWCA in the first place.[2]
III.
I would affirm the ALJ’s award of permanent partial disability benefits to Artis. However, I would remand for the ALJ to recalculate the railroad’s credit for the FELA settlement by excluding the amount that went for attorney’s fees.

. The election of remedies doctrine does not in any event bar Artis’s LHWCA claim. The doctrine "refers to situations where an individual pursues remedies that are legally or factually inconsistent.” Alexander v. Gardner-Denver Co., 415 U.S. 36, 49, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The proof and theories are not identical in FELA and LHWCA claims, and when Artis established his LHWCA claim, he did not offer facts or arguments that were inconsistent with positions he took in his earlier FELA suit.

. In calculating the amount of the credit, I would (unlike the ALJ) deduct attorney’s fees from the gross amount of Artis’s FELA settlement. This should be done because attorney's fees are not considered "compensation” for workplace injury under the usual workers’ compensation scheme. See Jenkins, 1996 WL 582388, at *3; Bundens v. J.E. Brenneman Co., 46 F.3d 292, 304 n. 24 (3d Cir.1995).