## Richmond

H. Burton Bates, Jr., Et Al., Etc. v. Malcolm B. Devers.

March 4, 1974.

Record No. 730380.

Present, All the Justices.

*Joseph B. Hyman; M. Patton Echols, Jr. (Echols & Hyman,* on brief), for appellants.

*John Dalonas,* for appellee.

Poff, J., delivered the opinion of the court.

By order of February 2, 1973, the trial court, on grounds of collateral estoppel, dismissed with prejudice the contract claim[1] brought by H. Burton Bates, Jr., et al. (Executors), executors of the estate of Arthur R. Morrison (Morrison), against Malcolm B. Devers (Devers). The claim in issue on appeal is apparently the last vestige of a series of complex business transactions dating back to 1946 and resulting in protracted litigation involving Morrison and Devers.

In 1962 a quiet title action styled *Capital Investors Co.* v. *Arthur R. Morrison, et al.,* (Civil Action No. 2968), involving multiple parties and millions of dollars in claims, was brought in the United

---

[1] We use the terms "claim" and "cause of action" interchangeably to convey the identical concept.

States District Court for the Eastern District of Virginia. Morrison and Devers as co-defendants filed a number of cross-claims against each other under FED. R. CIV. P. 13(g).

During October 1968, in an attempt to settle some of their claims, Morrison and Devers entered into the alleged agreement which is the basis of the claim at issue. In this agreement Devers promised to account to Morrison for several claims (based upon specifically enumerated transactions and checks) totalling $29,750. This agreement stated that an accounting between Morrison and Devers was an issue in Civil Action No. 2968; that the agreement was an attempt to settle certain specified (but not all) "indebtedness existing between the parties"; that any claims not specifically named would remain for future settlement; and that the agreement would be submitted to the court in Civil Action No. 2968.

Executors and Devers agree that this contract was not submitted to the federal court. Several checks which were the basis of claims expressly resolved in the 1968 agreement were also the basis for some of the cross-claims Morrison filed conditionally in 1965 against Devers in the federal action under the title *"Additional Claims Against Devers"*. The allegation as to these check claims stated:

"A schedule of miscellaneous checks totaling $52,503.57 is attached hereto and made a part hereof, if the court is to entertain the sort of claim now being advanced by Devers."

On July 10, 1970 Executors brought this action against Devers in the court below alleging several claims not relevant to this appeal.

Subsequently, the federal court entered a series of orders designed to limit and define the issues before it for resolution. Its September 16, 1970 order set forth the numerous issues raised by the pleadings including 2.(i) "Claim of the Morrison Estate . . . for return of copies of checks from Morrison to Malcolm B. Devers (Devers)" and gave counsel for all parties thirty days to clarify the issues enumerated or to assert additional issues.

By its order of November 27, 1970, the federal court extended to January 31, 1971 the time for counsel to file a list of "issues heretofore asserted" and "which have not been disposed of." The order further stated that "[a]ny issue not so listed will be considered waived, and may not be submitted to the Court" and that "no filing of [new] issues will be permitted."

In its memorandum opinion of January 18, 1971, the federal court specified the issues before it for resolution including "(H) Claim of the Morrison Estate . . . for return of copies of checks from Morrison to Malcolm B. Devers (Devers)" and requested that "[i]f any of the issues have been resolved, they may be eliminated from further consideration."

After more than nine years, Civil Action No. 2968 was terminated by judgment order entered June 21, 1971. Under that order, several claims of various parties were "dismissed with prejudice". The federal court also ordered returned certain "Checks from Arthur R. Morrison showing various amounts loaned by Arthur R. Morrison to Malcolm B. Devers, including a promissory note of said Devers or his corporation, payable to Morrison, aggregating some $74,322.74 principal, with interest."

On April 17, 1972, Executors filed in the court below a Supplemental Bill of Complaint alleging that a total of $29,750 plus interest was "due and owing" under the October 1968 agreement and that Devers had refused payment. Devers demurred and filed pleas of res judicata, accord and satisfaction, and the statute of limitations.

The trial court's decree entered June 29, 1972 resolved certain claims but deferred judgment on the contract claim alleged in the Supplemental Bill of Complaint. By its order entered February 2, 1973, the trial court dismissed this claim with prejudice on grounds of collateral estoppel.

No evidence on the issue of res judicata was heard by the trial court. From the record, it appears that its ruling of collateral estoppel was based on the pleadings and orders in Civil Action No. 2968 and the October 1968 agreement.

Executors argue that the check cross-claims filed in 1965 in the federal quiet title action were not directly related to the main cause of action; that these cross-claims were permissive under FED. R. CIV. P. 13(g); and that the federal trial court could not and did not by its orders require Executors to pursue all possible claims they might assert against another party. Executors further argue that the claim filed in the court below is based solely upon the October 1968 agreement; that this agreement was never before the federal court; and that the orders and judgment of the federal court did not in any way affect this separate cause of action.

Devers argues that the alleged agreement was not a contract but was intended to be a stipulation concerning prior disputed obligations; that these underlying obligations (as assignments to other parties)

were ruled upon by the federal court; and that this contract claim was waived because not pursued as required by the federal court orders.

Once again we consider the scope and applicability of the varied preclusive effects a prior valid judgment may have upon subsequent litigation—effects customarily grouped under the rubric, "res judicata". A judicially-created doctrine, res judicata rests upon considerations of public policy which favor certainty in the establishment of legal relations, *Commissioner* v. *Sunnen*, 333 U.S. 591, 597 (1948), demand an end to litigation, and seek to prevent the harassment of parties. *Pickeral* v. *Federal Land Bank of Baltimore*, 177 Va. 743, 750, 15 S.E.2d 82, 84-85 (1941). "The doctrine is firmly established in our jurisprudence and should be maintained where applicable." *Ward* v. *Charlton*, 177 Va. 101, 115, 12 S.E.2d 791, 796 (1941).[2]

Res judicata encompasses four preclusive effects, each conceptually distinct, which a final personal judgment may have upon subsequent litigation. These are merger, direct estoppel, bar, and collateral estoppel. *Lawlor* v. *National Screen Service Corp.*, 349 U.S. 322, 326 n.6 (1955) (citing Restatement of Judgments § 45 (1942)).[3] Of these four, bar and collateral estoppel are those most frequently raised in litigation, and those at issue here.

*Res judicata-bar*, is the particular preclusive effect commonly meant by use of the term "res judicata". A valid, personal judgment on the merits in favor of defendant bars relitigation of the *same cause of action*, or any part thereof which could have been litigated,[4] be-

---

[2] We recognize that in an appropriate case, res judicata, a doctrine based on public policy, may give way when in irreconcilable conflict with other, more important public policies. *E.g.*, *Mercoid Corp.* v. *Mid-Continent Investment Co.*, 320 U.S. 661, 670 (1944) (Legislated public policy against patent monopolies and misuse of patent privilege "is not 'at the mercy' of the parties . . . nor dependent on the usual rules governing the settlement of private litigation"); *Spilker* v. *Hankin*, 188 F.2d 35 (D.C. Cir. 1951) (Need for judicial scrutiny and control of attorney-client relationship outweighs policies of res judicata).

[3] Neither *merger* nor *direct estoppel* is applicable here.

*Merger* occurs when a valid and final personal judgment for money is entered for plaintiff. His original *cause of action* is merged into the judgment and is extinguished. Plaintiff can maintain a subsequent action only on the judgment and not on the original cause of action. Restatement of Judgments § 47 (1942).

*Direct estoppel* arises when defendant has won a judgment *not on the merits*. Although plaintiff's cause of action may survive the judgment, the parties are precluded in any subsequent action based upon that cause of action from relitigating any *issue* actually litigated and determined by the judgment. Restatement of Judgments § 45 (1942) (*Comment d.*)

[4] The barring of a cause of action "which could have been litigated" is not directed to an unrelated claim which might permissibly have been joined, but, to a claim

tween the same parties and their privies. *See* Restatement of Judgments §§ 47, 62, 83 (1942).

*Collateral estoppel*[5] is the preclusive effect impacting in a subsequent action based upon a collateral and *different cause of action.* In the subsequent action, the parties to the first action and their privies are precluded from litigating any *issue* of fact[6] actually litigated and essential to a valid and final personal judgment in the first action. *See* Restatement of Judgments §§ 68, 82 (1942).[7]

We have frequently distinguished these two preclusive effects. *Doummar* v. *Doummar*, 210 Va. 189, 191, 169 S.E.2d 454, 455-56 (1969); *Hagen* v. *Hagen*, 205 Va. 791, 793-94, 139 S.E.2d 821, 823 (1965); *Eason* v. *Eason*, 204 Va. 347, 349-50, 131 S.E.2d 280, 282 (1963); *Kemp* v. *Miller*, 166 Va. 661, 674-75, 186 S.E. 99, 103-04 (1936). But, though distinguishable, both impose the same procedural burden; the one asserting the defense of res judicata-bar or collateral estoppel must show by a preponderance of the evidence that the claim or issue should be precluded by the prior judgment. *See City of Portsmouth* v. *City of Chesapeake* 205 Va. 259, 270, 136 S.E.2d

---

which, if tried separately, would constitute claim-splitting. *Mendez* v. *Bowie*, 118 F.2d 435, 440 (1st. Cir.), *cert. denied sub nom., Rios* v. *Bowie*, 314 U.S. 639 (1941); *see Deal* v. *C. E. Nix & Son, Inc.*, 206 Va. 57, 60, 141 S.E.2d 683, 686 (1965).

[5] The term "collateral estoppel" was adopted by the drafters of the Restatement of Judgments to emphasize the vital distinction between its preclusive effect and that of merger and bar. Scott, *Collateral Estoppel by Judgment*, 56 Harv. L. Rev. 1, 2 & 3 n.4 (1942) (Reporter for the Restatement). The United States Supreme Court and other authorities use the term. 1B J. Moore, *Moore's Federal Practice* § 0.441 [2] at 3776 (1965).

We have employed various names. *Gordon* v. *Board of Supervisors of Fairfax County*, 207 Va. 827, 831, 153 S.E.2d 270, 274 (1967) (res judicata); *Petrus* v. *Robbins*, 196 Va. 322, 329, 83 S.E.2d 408, 412 (1954) (estoppel of record); *Virginia Ry. & Power Co.* v. *Leland*, 143 Va. 920, 930, 129 S.E. 700, 703 (1925) (estoppel by judgment). We prefer the term collateral estoppel.

[6] Collateral estoppel is applied with less rigor to issues of law. *See* Restatement of Judgments § 70 (1942) & Restatement Supp. (Judgments § 70) (1948).

[7] We have applied the doctrine of "mutuality", i.e., the doctrine that one cannot assert collateral estoppel unless he would have been similarly precluded had the prior litigation of the issue reached the opposite result. *E.g., Ferebee* v. *Hungate*, 192 Va. 32, 36, 63 S.E.2d 761, 764 (1951); *Unemployment Compensation Commission* v. *Harvey*, 179 Va. 202, 210, 18 S.E.2d 390, 393 (1942). The policy underlying mutuality is to insure a litigant that he will have a full and fair day in court on any issue essential to an action in which he is a party. But, as is the case with any other judicial doctrine grounded in public policy, the mutuality doctrine should not be mechanistically applied when it is *compellingly clear* from the prior record that the party in the subsequent civil action against whom collateral estoppel is asserted has fully and fairly litigated and lost an issue of fact which was essential to the prior judgment. *See Graves* v. *Associated Transport, Inc.*, 344 F.2d 894 (4th Cir. 1965) (applying Virginia law); *Eagle, Star & British Dominions Insurance Co.* v. *Heller*, 149 Va. 82, 140 S.E. 314 (1927).

817, 826 (1964); *Feldman v. Rucker*, 201 Va. 11, 18, 109 S.E.2d 379, 384 (1959).

Applying these principles, we look to the record before us. By their Supplemental Bill of Complaint of April 17, 1972, Executors asserted a claim for money based on the alleged contract of October 1968. The trial court ruled that this claim was precluded by collateral estoppel. But, for two reasons, collateral estoppel is not applicable. First, Devers seeks to preclude, not an *issue*, but a cause of action;[8] collateral estoppel is solely a doctrine of issue preclusion. Second, as Devers concedes, this contract was never before the federal court, and no essential issue concerning the contract was ever litigated or determined.

Nor is res judicata-bar applicable. Under Devers' theory, the claim on the contract should be barred here (1) if to allow it would be to allow splitting a cause of action; (2) if, under the Federal Rules of Civil Procedure, it was mandatory that it be asserted in the federal action; or (3) if it was, in effect, dismissed with prejudice by an order entered in the federal action.

Devers points only to Morrison's 1965 federal cross-claim on miscellaneous checks as a claim related to the present contract claim. Some of the compromise provisions of the 1968 agreement were not related to prior check transactions. When the parties entered into this agreement, a new and distinct set of legal rights arose from the instrument they executed. A claim based solely on a breach of the 1968 instrument, on the one hand, and claims based on earlier instruments, on the other, must be viewed as "distinct divisible claims, depending on separate contracts, made at different times and upon different principles; and the evidence to support one is not necessary to support the other, but much of it that would be material to sustain the one would be irrelevant to the other." *Kelly v. Board of Public Works*, 66 Va. (25 Gratt.) 755, 762-63 (1875).

---

[8] The scope of the term "cause of action" may vary with its context. *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 67-68 (1933). A "cause of action", for purposes of res judicata, may be broadly characterized as an assertion of particular legal rights which have arisen out of a definable factual transaction. *Compare* Restatement of Judgments § 61 (1942) *and* Restatement (Second) of Judgments § 61 (Tent. Draft No. 1, 1973). A cause of action may present several factual and legal issues. Here, Executors' contract cause of action when litigated may present many issues, e.g., whether there was a contract; whether the contract was breached; whether the breach was justified; whether there are any equitable defenses to nonperformance. In other cases it may be difficult to distinguish between a cause of action and an issue; this record does not present that difficulty.

Nor did Devers sustain his burden of showing that this contract claim, if asserted in federal court, would be precluded by the Federal Rules. Under FED. R. CIV. P. 13(g) "[a] pleading *may* state . . . a cross-claim . . ." (Emphasis supplied). Devers conceded on oral argument that this claim was permissive under that rule. Yet, he argues in his brief that "we do not know, from the record, whether this is a claim, crossclaim, counterclaim, set off or other type of claim. We also do not know whether Morrison was a mere nominal defendant as Plaintiffs allege, or something more. The record is incomplete as to the true nature of Morrison's role in the prior suit." If such is the state of the record, Devers clearly did not carry *his* burden of showing that this claim would be precluded under the Federal Rules.

Nor does the record show that the federal court orders precluded this claim. The purpose of the orders was to define the issues for resolution. In several of the orders the federal court did state that issues not defined by a specific time could not be submitted to the court and would be considered "waived"; but, we do not construe these preliminary orders to have the effect of dismissing with prejudice a claim unknown to the court. By its final order of June 21, 1971, the federal court expressly dismissed several specifically enumerated claims "with prejudice". The federal court did not use the terms "dismissed with prejudice" and "waiver" indiscriminately or interchangeably.

We hold that the trial court erred in ruling that this alleged contract claim was precluded by the prior judgment in Civil Action No. 2968. The judgment is reversed and the Supplemental Bill of Complaint is reinstated on the docket and the case is remanded.

*Reversed and remanded.*