## Richmond

NORMAN D. GROH, ET AL.

V.

B. F. SAUL REAL ESTATE INVESTMENT TRUST

September 9, 1982.

Record No. 800130.

Present: All the Justices.

*Jerrold G. Weinberg (Edward S. Stein; Weinberg & Stein,* on briefs), for appellants.

*Leslie A. Nicholson, Jr. [D.C.] (David H. Adams; Robert B. Robbins [D.C.]; David Lawrence Miller [D.C.]; Taylor, Walker & Adams; Shaw, Pittman, Potts & Trowbridge [D.C.],* on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

In this case involving a guaranty agreement, the trial court held that the agreement had merged into a judgment and had no further effect on the liability of the parties. We disagree and reverse.

On December 15, 1972, Triangle Inn Associates (Triangle), a Virginia limited partnership acting through Norman D. Groh and Gerald Lavenstein as general partners, purchased property in Norfolk. It borrowed $7,000,000 from B. Francis Saul, II, Garland J. Bloom, Jr., Trustees, and B. F. Saul Real Estate Invest-

ment Trust, executing a promissory note secured by a deed of trust on the land.[1] Lavenstein, Groh, and Groh's wife executed an unconditional guaranty to pay the note either jointly or severally.

On June 16, 1975, the obligees, with the Grohs' consent, released Lavenstein, who had since died, and his estate from any further liability on the 1972 guaranty. The debt then totaled $5,300,000.

On March 8, 1976, the Grohs and the obligees modified both the note and the guaranty, limiting the Grohs' personal liability to any indebtedness above $3,100,000.[2] On July 29, 1976, Saul notified Triangle and the guarantors that they had defaulted on the principal debt and demanded full payment of the $4,812,986.*88* balance under an acceleration clause.

On February 15, 1977, B. F. Saul Real Estate Investment Trust (Saul) filed a motion for judgment against the Grohs. Repeating the recited facts, it alleged that under the guaranty agreement the Grohs owed Saul $1,712,986.*88,* plus the accrued and unpaid interest on the entire unpaid balance and expenses. The Grohs, in a responsive pleading, denied the amount of the indebtedness. On September 19, 1977, the court entered a final judgment for $1,712,986.*98,* plus interest of $630,986.08, and all expenses. This totaled $2,348,973.06, and the court clerk recorded an abstract of the judgment in the judgment lien docket. The Grohs have not yet paid this judgment.

On February 12, 1979, Saul instituted foreclosure proceedings on the property pursuant to the 1972 deed of trust. At the sale, Saul bid the property in for $5,300,000. Saul applied this amount to the unpaid principal, interest, and costs. This resulted in a defi-

---

[1] For a case construing other provisions of this deed of trust, see *United Virginia Bank* v. *B. F. Saul Real Estate,* 641 F.2d 185 (4th Cir. 1981).

[2] The note's modification read:

5. Maker and Holder acknowledge that as of March 1, 1976, the Note is current. Holder and Maker also agree that the Note shall be and is hereby modified to provide that the Maker shall have no personal liability under the Note except for payment of that portion of the indebtedness under the Note in excess of . . . ($3,100,000.00).

The guaranty's modification read:

2. GUARANTORS understand and agree that their liability in regard to the NOTE has been modified to the extent reflected in the terms of the Modification of Note Agreement dated March 8, 1976, except that SAUL agrees that GUARANTORS' obligations under the GUARANTY shall be fully satisfied when all of the indebtedness evidenced by the NOTE except for . . . ($3,100,000.00) has been paid in full to SAUL or to the holder thereof.

ciency balance of $549,936.31. By marginal credit notation in the judgment lien docket, Saul reduced the 1977 judgment to that figure.

Pursuant to Code § 8.01-455,[3] the Grohs filed the present proceeding, a motion to have the judgment marked satisfied. They contended that, when the principal indebtedness was reduced below $3,100,000, as set forth in the modified guaranty agreement of March 8, 1976, the judgment was satisfied or discharged. Saul resisted the motion, alleging that the cause of action on the guaranty was merged in the judgment and could not be relitigated.

Saul contends that, by reducing the claim against the Grohs on the guaranty to a judgment, the cause of action on the guaranty merged in the judgment, and the judgment stands as a record debt for all purposes. We disagree.

The guaranty was but one phase of this overall commercial transaction. There was a promissory note secured by a deed of trust, plus an absolute guaranty for the promissory note. When the default occurred on the promissory note, Saul was in the position of attempting to maximize the collateral and securities available to it to the end that the principal indebtedness be paid. Saul's first step was to establish the maximum liability on the guaranty by reducing the claim to judgment. But the operative factors of the guaranty had not then come into existence because the principal indebtedness on the note had not been paid in full or reduced to $3,100,000 or less. These factors could not and did not occur until the foreclosure sale under the deed of trust 17 months later when the principal indebtedness was reduced by payment to less than $3,100,000. Then the contract right secured to the Grohs by the modified guaranty came into existence.

■ Ordinarily, a judgment is not conclusive of the rights of the parties which accrue subsequent to the rendition of that judgment, although upon the same subject-matter. *Lawlor* v. *National Screen Service Corp.*, 349 U.S. 322 (1955).

---

[3] Code § 8.01-455 states in pertinent part:

A defendant in any judgment . . . may, on motion, after ten days' notice thereof to the plaintiff in such judgment . . . apply to the court in which the judgment was rendered, to have the same marked satisfied, and upon proof that the judgment has been paid off or discharged, such court shall order such satisfaction to be entered on the margin of the page in the book wherein such judgment was entered. . . .

Saul cites *Bates* v. *Devers,* 214 Va. 667, 202 S.E.2d 917 (1974), for the definition of merger, but since *Bates* did not involve a merger, it is inappropriate in the context of this case.

In *McLaughlin* v. *Siegel,* 166 Va. 374, 380, 185 S.E. 873, 875 (1936), this court quoted with approval *Courtney* v. *Beale,* 84 Va. 692, 694, 5 S.E. 708, 709 (1888): "The character of the liability is not changed by merger into a judgment."

■ Saul contends that the modified guaranty agreement was construed by the court as permitting Saul to give credit for $3,100,000 at the time of judgment, thus giving full effect to the guaranty. The letter opinion by the trial court dated August 31, 1979, indicates that the court was of the same opinion, but an examination of both the pleadings in the original suit and the judgment order does not sustain this interpretation. Nowhere in the motion for judgment or responsive pleadings was the interpretation of the guaranty sought. In fact, it appears to have been skillfully avoided and only detected by a mathematical calculation. The guarantors in their responsive pleading specifically denied the allegation of the amount of the indebtedness.

Saul's interpretation renders the March 8, 1976, modification meaningless because it created no rights other than those already existing. If Saul believed that the judgment established liability for all time, then its action in reducing the amount entered on the judgment lien docket was totally inconsistent with its present position.

We cannot construe the modification to be meaningless. Reading the modifications of the note and the guaranty together, we think their meaning is plain—that is, whenever all the indebtedness evidenced by the promissory note had been paid in full except for $3,100,000, then the guaranty would be satisfied. This legally happened on February 12, 1979, when the secured collateral was liquidated. We think it would be patently unjust to deprive the Grohs of the benefits of the modified guaranty agreement simply because the civil claim went to judgment before the pledged security was reduced to cash or its equivalent.

The judgment of the trial court will be reversed, and we will enter judgment here directing the clerk of the trial court to mark the September 19, 1977, judgment as discharged pursuant to Code § 8.01-455.

*Reversed and final judgment.*