# CIRCUIT COURT OF THE CITY OF WINCHESTER

Winchester Neurological
Consultants, Inc.

v.

Mark A. Landrio

January 30, 2008

Case No. (Civil) 07-276

By Judge John E. Wetsel, Jr.

This case came before the Court on January 24, 2008, on the Plaintiff's Motion for a Declaratory Judgment claiming that the Defendant is precluded from prosecuting a second arbitration proceeding which he filed against the Plaintiff because of the res judicata effect of an earlier arbitration between the same parties involving the same termination of employment and the same contracts as are at issue in the second arbitration. Brad D. Weiss, Esquire, appeared for the plaintiff; and Stephen L. Pettler, Jr., Esquire, appeared for the defendant.

Based on the findings of fact and conclusions of law filed by the parties prior to trial, the Court summarily denied the Defendant's Motion for Sanctions because it was without merit.

Thereupon, the respective findings of fact were reviewed, exhibits were introduced, and argument was heard. For the reasons stated, the Court has decided to sustain the Winchester Neurological Consultants' (WNC) Plea of Res Judicata.

## I. *Statement of Material Facts*

The following material facts were either not in dispute or found by the Court by the greater weight of the evidence.

Dr. Landrio was formerly employed as a physician by WNC. The employment relationship between the parties was memorialized in three contracts which are material to this proceeding. An April 29, 1998, Employment Contract, an April 29, 1998, Stock Sale Agreement, and a December 1, 2003, Shareholders' Agreement, which latter agreement is the basis of Dr. Landrio's claim against WNC in the second arbitration.

The 1998 Employment Contract and the 2003 Shareholders' Agreement both contained an identical covenant not to compete prohibiting Dr. Landrio from practicing within fifty miles of any office of WNC for a period of three years following termination as an employee and/or stockholder, the duration of which is reduced by one year for each full five years of employment with WNC, and provided for liquidated damages to WNC in the event of a breach by Dr. Landrio. Dr. Landrio terminated his employment with WNC on March 1, 2006, and, after he terminated his employment with WNC, Dr. Landrio set up a competing practice less than one mile from WNC.

On March 22, 2006, WNC filed a Demand for Arbitration with the AAA in the matter of *Winchester Neurological Consultants, Inc., and Mark A. Landrio, M.D.*, hereinafter referred to as "First Arbitration," to enjoin Dr. Landrio from opening a competing neurology practice. On June 16, 2006, Dr. Landrio filed a counterclaim in the First Arbitration proceeding against WNC in which Dr. Landrio sought damages for lost revenues during the period of a temporary injunction granted to WNC by this court pending the convening of the First Arbitration Panel and for the costs of the arbitration.

All three of the contracts between the parties were produced in evidence in the First Arbitration. The first Arbitration Panel first addressed the issue of enforceability of the restrictive covenant in the 1998 Employment Agreement and the 2003 Shareholders' Agreement, and, on June 30, 2006, the Arbitration Panel issued an Interim Award ruling that the restrictive covenant violated public policy and was unenforceable.

On October 12, 2006, the Arbitration Panel reconvened to consider the WNC's claim against Dr. Landrio for liquidated damages for his breach of the Employment Agreement and the Shareholders' Agreement and Dr. Landrio's claim for damages sustained as a result of this Court's issuing the temporary injunction pending the convening of the First Arbitration Panel.

On November 27, 2006, the First Arbitration Panel issued a Final Award in which it denied WNC's liquidated damage claim, but it found that Dr. Landrio had breached his fiduciary duty to WNC by soliciting employees

of WNC prior to his termination of employment; so it awarded WNC nominal damages of $5,000.00 for Dr. Landrio's breach of his fiduciary duties as an employee of WNC.

The AAA awarded actual damages to Dr. Landrio in the amount of $145,000 based on his counterclaim for lost revenue during the period of the temporary injunction.

The 2003 Shareholders' Agreement provides in pertinent part:

> Paragraph 5: Upon a shareholders' termination of employment with the Corporation for any reason other than disability or death, such Shareholder shall sell to the Corporation all the Stock in the Corporation owned by such Shareholder, and the Corporation shall purchase all such shares of Stock owned by the Shareholder for the price and upon the terms set forth in paragraphs 6 and 7, respectively, of this Agreement. . . .

> Paragraph 8: The closing of the purchase of the Stock of a Shareholder shall take place on the first business day of the first month following the later of (i) the ninetieth (90th) day after the death, disability, or termination of employment of the Shareholder, or (ii) the sixtieth (60th) day after the qualification of a deceased Shareholder's personal representative.

Pursuant to Paragraph 8 of the 2003 Shareholders' Agreement, the closing on Dr. Landrio's sale of his WNC stock would have been on June 1, 2003, which, while one and a half months after WNC's filing of its demand for arbitration, was more than four months before the October 12, 2006, hearing on WNC's claim for damages under the 1998 Employment Agreement and the 2003 Shareholders' Agreement and on Dr. Landrio's claim for damages due to the issuance of the injunction.

While the stock purchase which is the basis of Dr. Landrio's demand for a second arbitration was due well before the October 12, 2006, arbitration hearing, neither party raised that issue before the First Arbitration Panel.

On February 12, 2007, Dr. Landrio filed a Demand for Arbitration against WNC in the matter of *Mark A. Landrio, M.D., and Winchester Neurological Consultants, Inc.*, hereinafter referred to as "the Second Arbitration," in which Dr. Landrio seeks to arbitrate the purchase of his shares in WNC based on the 2003 Shareholders' Agreement. Dr. Landrio's description of the nature of the dispute set forth in his Demand for Arbitration in the Second Arbitration states:

Claimant [Landrio] terminated employment with Respondent [WNC] on March 1, 2006. Pursuant to the parties' Agreement dated Dec. 1, 2003, the Respondent was to buy Claimant's shares in Respondent. Respondent refuses to buy Claimant's shares, *although the agreement was previously arbitrated, and Respondent was found not to have violated its provisions as claimed by Respondent.*

(Emphasis added.)

On June 13, 2007, WNC filed this Motion for Declaratory Judgment requesting that this Court find that Dr. Landrio's Demand for Arbitration is barred by collateral estoppel and/or res judicata because the First Arbitration Panel considered claims arising under the 2003 Shareholders' Agreement. The AAA has stayed the second arbitration pending this Court's ruling on Plaintiff's Motion for Declaratory Judgment.

## II. *Conclusions of Law*

Res judicata is a judicially created doctrine to promote judicial economy and finality of judgments and to prevent repetitive litigation. *Bates v. Devers*, 214 Va. 667, 670 (1974). This case is the wellhead of the modern doctrine of res judicata in Virginia. *See Jones v. Morris Plan Bank*, 168 Va. 284, 292-93 (1937). The well established rule forbidding the splitting of causes of action is clearly stated in 1 Am. Jur., *Actions*, § 96.

It is there said: "One may bring separate suits on separate causes of action even if joinder of the separate causes in one action is permissible, subject, however, to the power of the court to order consolidation. On the other hand, one who has a claim against another may take a part in the satisfaction of the whole, or maintain an action for a part only, of the claim, although there is some authority to the effect that a part of a demand cannot be waived for the purpose of giving an inferior court jurisdiction. But after having brought suit for a part of a claim, the plaintiff is barred from bringing another suit for another part. The law does not permit the owner of a single or entire cause of action or an entire or indivisible demand, without the consent of the person against whom the cause or demand exists to divide or split that cause or demand so as to make it the subject of several actions. The whole cause must

be determined in one action. *If suit is brought for a part of a claim, a judgment obtained in that action precludes the plaintiff from bringing a second action for the residue of the claim, notwithstanding the second form of action is not identical with the first, or different grounds for relief are set forth in the second suit. This principle not only embraces what was actually determined, but also extends to every other matter which the parties might have litigated in the case.* The rule is founded upon the plainest and most substantial justice, namely, that litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of suits."

*Jones*, at 292 (emphasis added).

Res judicata is claim preclusion based on a former judgment, and collateral estoppel is the more narrow doctrine of issue preclusion based on a prior judgment.

> Res judicata or claim preclusion bars a party from relitigating a matter that the party has already had the chance or opportunity to litigate. Thus, res judicata or claim preclusion bars the litigation of not only issues that were already litigated, but also issues that could have been litigated, might have been litigated, or should have been litigated in the former suit or former proceedings. In this respect, *res judicata, or claim preclusion, is a broader remedy than collateral estoppel which applies only to issues that were actually litigated.*

47 Am. Jur. 2d, *Judgments*, § 475. The bar of res judicata is broader than that of collateral estoppel; res judicata precludes subsequent litigation between the same parties involving any right of action arising out of the same transaction that could have been asserted in the earlier action which is asserted as a bar to the later action. *See Bates v. Devers*, 214 Va. 667, 670-71 (1974); *see generally* 47 Am. Jur. 2d, *Judgments*, § 464.

The first question to consider in deciding whether the broad claim preclusion bar of res judicata applies is whether there was prior litigation between the same parties or their privies which resulted in a final judgment. In this case there was no dispute on that issue. The parties are the same and the award of the First Arbitration was reduced to a final judgment. *See Waterfront Marine Constr., Inc. v. North End 49ers Sandbridge Bulkhead Groups A, B, and C*, 251 Va. 417, 430-31 (1996) (judgment in first arbitration on breach of

a construction contract barred a second arbitration on a claim of breach of warranty arising from the same construction project); *see generally* 47 Am. Jur. 2d, *Judgments*, § 519.

Having satisfied the final judgment between the same parties requirement, the second question is whether the first litigation involved the same transaction, which some courts have referred to as "cause of action," and this concept has produced some confusion, because sometimes both courts and lawyers indiscriminately use the term "cause of action" when they mean "right of action," and the two are not the same. As Justice Kinser stated in her dissent in *Davis v. Marshall Homes, Inc.*, 265 Va. 159, 174 (2003):

> In *Bates*, we explained that the scope of term "cause of action" may vary depending on the context but that, for purposes of res judicata, it is "the assertion of particular legal rights which have arisen out of a definable factual transaction."

*Quoting Bates v. Devers*, 214 Va. at 672. In *Trout v. Commonwealth Transp. Comm'r*, 241 Va. 69, 73 (1991) (interpreting nonsuit statute Va. Code § 8.01-380), the Supreme Court noted the substantive distinction between the concepts of "cause of action" and "right of action":

> An "action" and a "cause of action" are quite different. "Action is defined by Code § 8.01-2, as noted above. We defined "cause of action" in *Roller v. Basic Construction Co.*, 238 Va. 321, 327 (1989) [a worker's compensation case], as a "set of operative facts which under the substantive law may give rise to a right of action.

One transaction (cause of action) may give rise to myriad rights of action.

The principles governing the application of the doctrine of res judicata are "well established" and have recently been restated in Supreme Court of Virginia Rule 1:6, which was in effect when the First Arbitration decision was made on WNC's liquidated damage claims in October 2006, and which provides that:

> A party, whose claim for relief arising from . . . a transaction is decided on the merits by final judgment, shall be forever barred from prosecuting any second or subsequent civil action that arises from the same . . . transaction, whether or not the same legal theory or rights asserted in the second or subsequent action

were raised in the prior lawsuit, and regardless of the legal elements or evidence upon which any of the claims in the prior proceeding depended, or the remedies sought.

Rule 1:6 is a restatement of the principles of *Bates v. Devers, supra*, as further refined in *Allstar Towing, Inc. v. City of Alexandria*, 231 Va. 421 (1986). "In *Allstar*, for purposes of res judicata, we adopted a definition of the term "cause of action" as "an assertion of particular legal rights which have arisen out of a definable factual transaction." *Davis v. Marshall Homes, Inc.*, 265 Va. 159, 171 (2003). Accordingly, those well established principles govern the resolution of this case, not the "same evidence" dicta in *Davis*, upon which Dr. Landrio relied in his argument.

In *Virginia Imports, Ltd. v. Kirin Brewery of Am., L.L.C.*, 50 Va. App. 395, 410, n. 6 (2007), the Court of Appeals noted that the transactional concept referenced in Rule 1:6 has historically been applied to determine the scope of the shield of res judicata, stating:

> Under settled principles, the "effect of a final decree is not only to conclude the parties as to every question actually raised and decided, but as to every claim which *properly belonged to the subject of litigation* and which the parties, by the exercise of reasonable diligence, *might have raised at the time*." *Smith v. Holland*, 124 Va. 663, 666, 98 S.E. 676, 676 (1919) (emphasis added). This could-have-litigated-should-have-litigated principle applies to the narrow "same evidence" test employed by *Davis v. Marshall Homes, Inc.*, 265 Va. 159, 166, 576 S.E.2d 504, 507 (2003), and to the broader transactional approach adopted by Rule 1:6 (promulgated to supersede the holding in *Davis*, Kent Sinclair, *Guide to Virginia Law & Equity Reform and Other Landmark Changes*, § 11.01 et seq., at 245 (2006)).

Examining the underlying factual transaction to determine the scope of the application of the doctrine of res judicata is the modern Restatement of Judgments view[1] and is the rule which has consistently been applied in

---

[1] Restatement Second of Judgments, § 24, defines the dimensions of the term "claim" for purposes of merger or bar by res judicata and states: "(1) When a valid final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of transactions, out of which the action

Virginia since *Bates v. Devers, supra,* although the decision in *Davis v. Austin Homes, Inc.,* 265 Va. 159 (2003) cast a cloud over the doctrine. *Bates v. Devers,* 214 Va. 667, has been regularly relied upon since its issuance by the Supreme Court, and it was cited with approval by the *Davis* majority opinion. In the *Bates* decision, the Supreme Court cited with approval the Restatement of Judgments and stated:

> The scope of the term "cause of action" may vary with its context. A "cause of action," for purposes of res judicata, may be broadly characterized as an assertion of particular legal rights which have arisen out of a definable factual transaction. Compare Restatement of Judgments § 61 (1942) and Restatement (Second) of Judgments § 61 (Tent. Draft. No. 1 1973). A cause of action may present several factual and legal issues.

*Id.* at 672, n. 8.

The *Bates* Court denied the bar of the former judgment because the later action was one based solely on a 1968 contract which was not submitted to the federal court in the earlier case whose final judgment was asserted as a bar. Since the contract sued upon in the second action was not before the Court in the first action and was later in time to the transaction at issue in the first case, the *Bates* Court understandably ruled that the second action based on the 1968 contract was not precluded by either collateral estoppel or the broader claim preclusion bar of res judicata.

The concept of applying a transactional analysis to determine the scope of the bar of res judicata is nothing new in Virginia and is in keeping with the modern doctrine as set forth in *Bates v. Devers, supra.* The *Bates* Court applied the transaction rule governing contract cases as generally stated in 47 Am. Jur. 2d, *Contracts,* § 477:

> In the context of res judicata, a contract is typically considered to be a "transaction" so all claims from the breach of the contract must be brought in the original action, as well as all defenses.

---

arose. (2) What factual groupings constitutes a 'transaction,' and what groupings constitutes a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

Claims and defenses not asserted in the original action are subject to the bar of preclusion. However, applying the rule that a subsequent action can be brought on a cause of action that accrues at a different time, a final determination of an action for an amount due under an installment contract does not preclude a later action based on defaults in payments of installments due after the judgment in the prior action.

Regarding a contract as a transaction for the purposes of deciding the scope of the bar of res judicata has long been the law in Virginia. "A claim arising from an indivisible contract cannot be split and made the subject of separate contracts." *Flora, Flora, & Montague v. Saunders*, 235 Va. 306, 310, *citing Hancock v. White Hall Tobacco Warehouse Co.*, 102 Va. 239, 242-43 (1904) ("A demand arising from an entire contract cannot be divided and made the subject of several suits; and if several suits are brought for a breach of such a contract, a judgment upon the merits in either will bar a recovery in the others.").

In this case, the 2003 Shareholders' Agreement was in evidence, was a source of claims arbitrated, and even Dr. Landrio admitted in his demand for the Second Arbitration "the agreement was previously arbitrated" in the First Arbitration. In the First Arbitration, the Shareholders' Agreement was the basis of the WNC's claim for an injunction and for liquidated damages. Landrio's claim for payment for his stock under the Shareholders' Agreement had matured four and a half months before the October 12, 2006, arbitration hearing on the issue of damages. "If the cause of action in the second action arises after the rendition of the judgment in the first action, it is a different cause of action not barred by the prior judgment." 47 Am. Jur. 2d, *Judgments*, § 481. Under the one contract one transaction rule and under the "could-have-been-should-have been" litigation rule applied to prohibit claim splitting, the judgment rendered in the First Arbitration bars any later action which is based on the 2003 Shareholders' Agreement which had accrued in time to be asserted in the First Arbitration.

In addition to the rights arising under the 2003 Shareholders' Agreement, the termination of Dr. Landrio's employment with WNC and his rights against WNC arising from that termination was also a transaction that was presented to the First Arbitration Panel. Therefore, Dr. Landrio's rights against WNC following his termination are also subject to the res judicata claim bar of the First Arbitration Award under the "could-have-been-should-have-been" litigated doctrine, because it was a "definable factual transaction" that was considered in the First Arbitration. As Justice Kinser keenly observed in her dissent in *Davis v. Marshall Homes, Inc.*, 265 Va. 159, 179 (2002):

[O]ur implementation in *Allstar Towing* of the concept that a cause of action, for purposes of res judicata, must be viewed in terms of a "definable factual transaction" was a shift in our res judicata jurisprudence to the approach employed by the majority of jurisdictions: "The present trend is to see [a] claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive legal theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the primary rights that may have been invaded; and regardless of the variations in the evidence needed to support those theories or rights. The transaction is the basis of the litigative unit which may not be split." Restatement of Judgments (Second), § 24(1), cmt. a.

*Davis*, at 179.

Under the modern Restatement Second of Judgments view, whose concepts are embodied in Rule 1:6, termination of employment is a "definable factual transaction" for the purpose of the application of res judicata. *See e.g., Keith v. Aldridge*, 900 F.2d 736 (4th Cir. 1990) (consent judgment on employee's first action against his employer barred second action against employer based on alleged violation of Fifth Amendment due process rights); *Steward v. Garrett*, 1990 U.S. Dist. (Va.) LEXIS 19380 (judgment dismissing employee's first action against employer seeking review of EEOC decision barred second action alleging other grounds of discrimination and retaliation); and *Apseloff v. Family Dollar Stores, Inc.*, 2006 U.S. Dist. (Ohio) LEXIS 45779 (judgment dismissing employee's first action against employer seeking payment of stock options barred second action seeking accrued vacation pay).

Dr. Landrio asserted a counterclaim against WNC in the First Arbitration for damages for lost revenues incurred during the pendency of the preliminary injunction issues by this court. In his counterclaim, he could have and should have asserted all of claims against WNC arising from his termination of employment at WNC, including WNC's failing to purchase his stock pursuant to the 2003 Shareholders' Agreement, but he elected not. By doing so he engaged in claim splitting and assumed the risk that the bar of res judicata would prevent him from later asserting the claim for payment of his stock. "[A] valid . . . judgment on the merits . . . in favor of defendant bars relitigation of the same cause of action, [which in this case is Dr. Landrio's termination of employment] or any part thereof which could have been

litigated, between the same parties. . . . *Bates v. Devers*, 214 Va. 667, 670-71, *quoted with approval in Flora, Flora, & Montague v. Saunders*, 235 Va. 306, 310 (1988).

Under the "could-have-been-should-have-been" rule and Virginia's clearly and repeatedly stated policy against claim splitting, once Dr. Landrio asserted a counterclaim in the First Arbitration, he had to set forth all claims arising from his termination from WNC or lose the right to later assert them. Since Dr. Landrio filed a counterclaim, this case is distinguished from the exception to the bar of res judicata that the failure to assert a counterclaim does not bar a later action on the counterclaim. *See* Restatement Second of Judgments, § 22;[2] and 47 Am. Jur. 2d, *Judgments*, § 504. While Virginia does not have mandatory counterclaims, where the claimant asserts a counterclaim arising from a transaction, such as his termination, he must assert all claims arising out of that transaction, because if he does not, he is engaging in proscribed claim splitting and will be potentially subject to the bar of res judicata if he attempts to later assert those claims in later litigation.

In the interval between the decision in *Davis v. Marshall Homes, Inc.*, 265 Va. 159, 164-65 (2003), and the promulgation of Supreme Court Rule 1:6, some courts applied the "same evidence" dicta from the *Davis* decision in res judicata cases. *See, e.g., Rose v. Fluvanna Board of Supvrs.*, 2006 U.S. Dist. LEXIS 6130; and *Harrison v. Banker*, 71 Va. Cir. 120 (Chesterfield 2006) (same property different claims; so different evidence; so no bar). However, the "same evidence" test is an issue preclusion analysis which is more appropriately applied in collateral estoppel cases than in res judicata cases. *See* 47 Am. Jur. 2d, *Judgments*, § 494.

The doctrine of res judicata bars the assertion of claims in the second arbitration which could have been asserted in the first arbitration. There is an identity of parties and of the transaction, the 2003 Shareholders' Agreement, was a source of claims in the First Arbitration and is the basis of Dr. Landrio's

---

[2] § 22 Effect of Failure to interpose counterclaim: "(1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2); (2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of the judgment in that action, from maintaining an action on the claim if: (a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or (b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action."

claim in the Second Arbitration. Dr. Landrio's termination of employment and the rights of the parties subsequent to that termination was a transaction before the First Arbitration Panel. Dr. Landrio had an opportunity to raise the issue of the purchase of his shares in WNC in his counterclaim during the First Arbitration, but he did not assert his claim; therefore, Dr. Landrio's demand for a second arbitration is barred by res judicata, and Dr. Landrio cannot raise the issue of payment for his stock based on his Shareholders' Agreement in the Second Arbitration.

## III. *Decision*

Therefore, Winchester Neurological Consultants, Inc.'s Plea of Res Judicata is sustained, and Dr. Mark Landrio is barred from prosecuting his claim for payment of his stock before the Second Arbitration Panel and from prosecuting any other claims against Winchester Medical Consultants, Inc., based on either the 1998 Employment Agreement or the 2003 Shareholders' Agreement.