PRESENT:  Lemons, C.J., Goodwyn, Mims, Powell, Kelsey, and McCullough, JJ., and Millette, S.J.

DEBRA CHILTON-BELLONI

v.  Record No. 160612

SHARON E. ANGLE, ZONING
ADMINISTRATOR FOR AND ON
BEHALF OF THE CITY OF STAUNTON,
ET AL.

OPINION BY
SENIOR JUSTICE LEROY F. MILLETTE, JR.
November 9, 2017

FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
Charles L. Ricketts III, Judge

In this appeal of two related zoning actions tried together, we address whether a circuit court properly relied on principles of res judicata to refuse to stay an injunction brought by the City of Staunton's Zoning Administrator against the landowner pending further proceedings before the City's Board of Zoning Appeals, and whether the circuit court properly granted the injunction against the landowner.  For the reasons stated herein, we conclude that the circuit court erred, and we will reverse and remand as to the injunction.  We decline to address the accompanying appeal from the denial of the landowner's petition for a writ of mandamus.

I.  FACTS AND PROCEEDINGS

In 2006, a building official from the City of Staunton visited the home of Frank Belloni (now deceased) and Debra Chilton-Belloni to review the site and plans to build a wall.  Their historic home was located on a now-busy street, and the purpose of the wall was primarily for sound proofing and privacy.  The building official informed them they could legally build the wall, and the Bellonis began construction of the wall consistent with those plans.

In 2007, John Glover, then Zoning Administrator for the City of Staunton, advised the Bellonis that the nearly completed wall in fact violated a Staunton zoning ordinance.  The

essence of the violation included obstruction of the line of sight at an intersection and wall height exceeding the permitted three and a half feet. He acknowledged that "there may have been a miscommunication with my staff, but that does not change the fact that the wall is in violation of Section 18.120.010(2) of the City of Staunton Code."

The Bellonis sought a variance from the Board of Zoning Appeals, which was granted in February 2008. Glover and the City then appealed the variance to the circuit court, arguing that the BZA lacked the authority under current law to issue the variance. The relevant statute at the time required a "clearly demonstrable hardship approaching confiscation" in order to grant a variance. Code § 15.2-2309 (2007). Agreeing with the City, the circuit court reversed the decision granting the variance by a final order entered June 17, 2009.

The Bellonis did not take down or alter the wall, and the City did not immediately pursue action to ensure that they did so. In July of 2009, the statute was changed so as to delete the "approaching confiscation" language. 2009 Acts ch. 206. In 2011, the City filed criminal charges against the Bellonis for failure to remove the wall, but the prosecution was found time-barred.

In 2013, the wall was damaged by a third party. In September 2013, Chilton-Belloni, now the sole owner of the property due to her husband's recent passing, received a letter from the new Zoning Administrator, Sharon Angle. The letter advised her that the City had observed "some missing pieces [of the wall]," and Chilton-Belloni should "be advised that any action to do any work on the wall, other than to bring the entire wall into compliance, will be considered yet another violation."

In the subsequent months, numerous letters were exchanged between Angle and Chilton-Belloni. On May 9, 2014, in response to demands that Chilton-Belloni demolish the wall,

Chilton-Belloni requested a modification or variance from the zoning ordinance, citing hardship. She noted that the BZA had agreed that the original "misunderstanding" had constituted undue hardship, but that the state of the law at the time resulted in the circuit court reversing the ruling. However, in light of the 2009 change in the statute, deleting the "approaching confiscation" requirement, Chilton-Belloni requested a modification or variance at this time.

On May 30, 2014, Angle replied in a letter she did not have that power to authorize a modification or variance and that the issue was already fully adjudicated. Additionally, while she expressed no view on the changes to Code § 15.2-2309, she stated the provisions suggested no retroactive intent.

On June 5, 2014, Chilton-Belloni filed an appeal of Angle's decision to the BZA. She sought a variance, acknowledging that she had sought one previously, prior to the statutory change. Chilton-Belloni contends that Angle refused to convene the BZA for a hearing on the matter following her filing.

On July 10, 2014, pursuant to Code §§ 15.2-2208(A) and 15.2-2286(A), Angle sought an injunction compelling Chilton-Belloni's compliance with the City Code and removal and remediation of the wall. Chilton-Belloni moved to stay the circuit court proceedings to allow the BZA to consider her request for a variance. The circuit court denied the stay based on the doctrine of res judicata.

On March 24, 2015, following the denial of the stay, Chilton-Belloni filed a petition for a writ of mandamus against the BZA, demanding that it convene and hold a hearing on her case as such action was a nondiscretionary statutory duty. Sharon Angle and the City of Staunton then filed a motion to intervene as defendant-intervenors in the mandamus action, which was granted.

The circuit court tried and ruled on the actions together, issuing a shared letter opinion but separate orders. The court denied the petition for the writ of mandamus on the basis of res judicata and granted the injunction because Chilton-Belloni had "exhausted her administrative remedies" in the proceedings "concluded by the Order of the Staunton Circuit Court entered on June 17, 2009"; "the Court has already ruled that she is not entitled to re-litigate, or have additional review of the matter"; and the circuit court engaged in its own determination that a violation occurred. We granted Chilton-Belloni this appeal.

## II. DISCUSSION

The mandamus action and the injunction application were tried together due to the related underlying facts, and counsel initially attempted to combine the two actions for the purposes of appeal. However, the BZA, an indispensable party to the mandamus action, was not noticed on the notice of appeal. This ordinarily results in our dismissal of that appeal. *Asch v. Friends of Mt. Vernon Yacht Club*, 251 Va. 89, 92-93, 465 S.E.2d 817, 819 (1996); *Butler v. Butler*, 219 Va. 164, 167, 247 S.E.2d 353, 355 (1978). When asked to address the mandamus appeal, specifically the notice issue, at oral argument, Chilton-Belloni's counsel stated, "I would respectfully submit that the proceedings are self-contained in the injunction proceedings,"* and provided substantive argument on the injunction issue alone. We treat this as an abandonment of the mandamus argument and accept his invitation to address the issues as contained within the injunction proceedings.

The circuit court's 2015 denial of the stay was clearly and unequivocally based on the doctrine of res judicata and the conclusion that a change in the law is not a change in circumstance permitting Chilton-Belloni to revisit the BZA. This same reasoning became

---

* Oral argument at 11:40.

4

inextricably linked to the final order granting the injunction, as the final order rested in part on the conclusion that Chilton-Belloni had "exhausted her administrative remedies" and was not entitled to re-litigate them. We therefore examine the underlying denial of the stay and its reliance on res judicata.

"A judicially-created doctrine, res judicata rests upon considerations of public policy which favor certainty in establishment of legal relations, demand an end to litigation, and seek to prevent harassment of parties." *Bates v. Devers*, 214 Va. 667, 670, 202 S.E.2d 917, 920 (1974) (internal citations omitted). The doctrine of res judicata includes principles of claim preclusion and issue preclusion. *Lee v. Spoden*, 290 Va. 235, 245, 776 S.E.2d 798, 803 (2015). As the circuit court used the term res judicata generally, we consider whether either principle could have been a valid basis for the circuit court's ruling. Both preclusion doctrines impose the same burden: the party asserting the preclusion must show by a preponderance of the evidence that litigation of the claim or issue should be precluded by the prior judgment. *Bates*, 214 Va. at 671, 202 S.E.2d at 921. Whether preclusion is applicable at all, however, generally represents a question of law to be reviewed de novo. *Rhoten v. Commonwealth*, 286 Va. 262, 267, 750 S.E.2d 110, 112 (2013).

In invoking res judicata in its 2015 denial of the stay, the circuit court could only have relied on a single prior proceeding with two distinct phases and rulings: one administrative appeal and one judicial appeal. We look at the potential res judicata effects of each.

A. *The 2009 Circuit Court Ruling*

Because there is no doubt that res judicata is applicable to findings and judgments in judicial proceedings, we first examine the ruling in the prior appeal by the City to the circuit court which resulted in the 2009 reversal of the BZA's variance. *Grose v. Cohen*, 406 F.2d 823,

5

824 (4th Cir. 1969). Issue preclusion bars "successive litigation of an issue of fact or law *actually litigated and resolved* in a valid court determination essential to the prior judgment." *Lee*, 290 Va. at 246, 776 S.E.2d at 803 (internal citation omitted) (emphasis added). We therefore look to the issue appealed and ruled upon by the circuit court, to what was adjudicated by that court at that time. In reviewing the final order from the 2009 proceeding, the incorporated letter opinion, and the testimony as to the scope of the proceeding, *see Bernau v. Nealon*, 219 Va. 1039, 1041, 254 S.E.2d 82, 84 (1979) (discussing elements of the record cognizable in ruling on preclusion claims), it is clear that the appeal and holding were narrowly tailored to a single issue: whether the BZA had exceeded its authority to grant a variance by improperly applying the law as it existed at that time. Specifically, the incorporated letter opinion observes:

> As noted earlier, although many arguments have been made regarding the applicability of the zoning restrictions to the properties involved, and the nature and the extent of administrative decisions and interpretations that may have been made by the zoning administrator, there are no appeals or Petitions for Certiorari now before the Court regarding any such decisions or interpretations. . . . The only matters before the Court concern whether or not the variances granted by the BZA were done so in accordance with existing law. A review of the record shows that at the time the BZA made its decision it recognized that it was not doing so in accordance with the requirements of *Cochran v. Fairfax County Board of Zoning Appeals*, 267 Va. 756[, 594 S.E.2d 571] (2004). . . . The BZA and the property owners now urge the Court to review the zoning restrictions and make a determination as to whether the restrictions are even applicable to the properties involved. However, the Court is restrained from doing so because those matters are not properly before the Court at this time.
> . . . .
> That being the case there is nothing further that the Court can do at this time except reverse the BZA's decision to grant the variances.

The narrow nature of this ruling is insufficient to provide a basis to preclude Chilton-Belloni's 2014 appeal to the BZA seeking a variance under subsequent law. The circuit court did not issue a general ruling that the Bellonis were not entitled to a variance, or even adjudicate

6

whether the wall was in fact in violation in the first place, much less whether the owner's use of the property should be enjoined pursuant to Code § 15.2-2309 (2007). The court simply held, as a matter of law, that the BZA had erred.

## B. *The 2007-2008 Administrative Appeal*

We therefore turn to the original administrative appeal before the BZA. Here, Angle relies on the argument that the Bellonis had previously sought a variance for their wall, and Chilton-Belloni is now seeking another based on the same wall, which should be barred as res judicata. We need not reach the issue of whether res judicata applies to administrative proceedings generally, because even if it can apply in some contexts, we find its application in the realm of zoning appeals for this variance request to be improper.

As a judicial doctrine, we must be cautious about the appropriate use of res judicata in administrative settings in which actions may not always be truly adjudicative. "Only what is adjudicated can be res judicata. Administrative action other than adjudication cannot be res judicata." *Appalachian Power Co. v. John Stewart Walker, Inc.*, 214 Va. 524, 534, 201 S.E.2d 758, 766 (1974). Accordingly, "[a]n adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication," including, among other requirements, "[a] formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status." Restatement (Second) of Judgments § 83 (1982). We require a level of formality to adjudication akin to that of a court of competent jurisdiction. *See Simmons v. Commonwealth*, 252 Va. 118, 120-21, 475 S.E.2d 806, 807 (1996) ("[T]he establishment of a prior judgment rendered by a court of competent jurisdiction is a condition precedent to the allowance of any plea in bar asserting [the

doctrine of res judicata]. Yet, by no stretch of the imagination can it be said that an administrative suspension of an operator's license for failure to take a blood or breath test is a judgment rendered by a court of competent jurisdiction. What is involved is neither more nor less than the term administrative suspension implies, an administrative act, not a judgment by a court of competent jurisdiction."); *see also Plotkin v. Fairfax County Dep't of Family Servs.*, Record No. 0085-98-4, 1998 Va. App. LEXIS 535 (Oct. 13, 1998) (unpublished) (declining to apply the doctrine of res judicata to Division of Social Services administrative hearings at the Division of Social Services because a "DSS administrative hearing, which lacks due process guarantees, enforcement power or even an impartial adjudicator, is not a court").

With this high standard in mind, we turn to whether a BZA, in issuing variances, operated in a manner equivalent to a court of competent jurisdiction. We find that it clearly did not. The incarnation of Code § 15.2-2309 applicable at the time of the Belloni's original appeal set forth a base standard for the "power" to "authorize" a variance. However, the language of the statute did not clearly require the granting of a variance if the base requirements were met; beyond the statutory floor, the essence of a variance was essentially a discretionary opportunity for the BZA to accommodate an exception to existing law and so cannot be a true "adjudication" akin to that of a court of competent jurisdiction. Furthermore, in this case in particular, as the circuit court ruled and the BZA itself admitted, the BZA neglected to follow any prescribed formula on issues of law.

Our inquiry is further framed with the acknowledgment that "[r]es judicata of administrative decisions is not encrusted with the rigid finality that characterizes the precept in judicial proceedings." *Grose*, 406 F.2d at 824. The Fourth Circuit provides a helpful framework for considering the application of res judicata to a particular form of administrative law:

Application of the doctrine often serves a useful purpose in preventing relitigation of issues administratively determined, *e.g.*, *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402 (1940); but practical reasons may exist for refusing to apply it, *e.g.*, *United States v. Stone & Downer Co.*, 274 U.S. 225 (1927). And in any event, when traditional concepts of res judicata do not work well, they should be relaxed or qualified to prevent injustice. 2 Davis, Administrative Law, § 18.03 (1958).

*Id.* at 824-25.

In the context of a government agency responsible for continuing administration of a body of law affecting the public generally, a change in applicable legal context can produce disparate results over time, resulting in an inequity that is in tension with the principles of res judicata. Restatement (Second) of Judgments § 28 cmt. c. In such circumstances, the refusal to apply a preclusive effect may be justified if the effect of applying preclusion would be to favor or disfavor similarly situated parties based on the timing of the administration of the law. *Id.* In regards to zoning, the Supreme Court of Rhode Island said it well:

[A] strict rule of res adjudicata in zoning matters could have unfortunate consequences such as denying a landowner once refused relief the right to a reconsideration of an application based upon intervening circumstances resulting in a deprivation of all beneficial use of his property. Such an undesirable result could have serious constitutional implications and would do violence to the expressed legislative will authorizing zoning boards to vary the terms of zoning ordinances in hardship cases.

*Marks v. Zoning Bd. of Review*, 203 A.2d 761, 763 (R.I. 1964).

Local zoning offers a unique administrative challenge in that property remains held over time in changing neighborhoods, inevitably producing changes in the law, including in zoning ordinances themselves and applicable statutes. These reflect the changing desires of the locality as to the direction of development of the neighborhood and, in the case of statutes from the General Assembly, of the scope of authority provided to accommodate such changing circumstances.

9

As a result, in the case of administration of local zoning ordinances and exceptions thereto, the interests in finality and judicial economy may at times give way to the interest in treating various landowners fairly and equally at a given time. Restatement (Second) of Judgments § 28 cmt. c. & illus. 4. Examining the question of administration of variances in particular, we see no reason that either claim or issue preclusion would be required to apply.

In the context of zoning law, it is in the interest of finality and administrative economy for the BZA to enjoy the freedom to invoke principles of res judicata to decline to constantly rehear the same cause of action absent the allegation of changed circumstances. That is not the case here, however. Here, a superior judicial body has found that, as a matter of law and despite a change in the law, the BZA is categorically precluded from rehearing an appeal. We disagree. Use of a property should not be forever governed and restricted by the date at which an owner first seeks permission to alter the property. It should be allowed to evolve along with the zoning standards of the locality. There are ample reasons to permit property owners and zoning appeals boards to revisit a zoning question when the relevant ordinances or statutes have changed, and utterly unjust to bar a landowner from potential benefits to his or her property merely because he or she, or a previous owner, had engaged in a prior appeal of the matter under different law.

In sum, the doctrine of res judicata that the circuit court explicitly relied on in 2015 was not a proper basis to deny the stay based on the prior administrative or circuit court proceedings. We therefore find the 2015 denial of the stay to be in error. As a result, the final order granting an injunction, when Chilton-Belloni had not in fact been afforded the opportunity to exhaust her administrative remedies, was also in error.

### III.  CONCLUSION

As to the mandamus action, for the reasons stated, the appeal is dismissed.  As to the stay and the injunctive relief sought, for the reasons stated, we will reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

*Dismissed in part,*
*reversed in part,*
*and remanded.*