Filed 06/30/21

| VERMONT SUPERIOR COURT | | CIVIL DIVISION |
|---|---|---|

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT  05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 27-1-21 Wncv

| O'Connor vs. State of Vermont |
|---|

# ORDER

Appellant Timothy O'Connor seeks Rule 74 review of a decision of a Vermont Agency of Transportation hearing examiner affirming the Department of Motor Vehicle's reimposition of the life suspension of his driver's license pursuant to 23 V.S.A. § 1209a(b) (reinstatement upon proof of abstinence) after determining that he violated a condition of reinstatement requiring total abstinence from alcohol.  On appeal, Mr. O'Connor argues that his hearing was procedurally inadequate, the evidence does not support the hearing examiner's findings, and the "total abstinence" condition placed on his reinstatement by the previous hearing examiner who reinstated his license is invalid and unenforceable.  In response, the State argues that the condition was authorized by statute, it was a reasonable exercise of the Commissioner's power, it cannot be collaterally attacked now, the evidence supports the finding that Mr. O'Connor violated it, and any procedural informalities in the hearing below caused no prejudice.

The court concludes that the total abstinence condition imposed by the hearing examiner at the time of reinstatement in 2009 is invalid and unenforceable.  The court thus focuses on that issue.

Mr. O'Connor's driver's license was suspended for life in 2005 following a third or subsequent conviction for driving under the influence.  At the time, Vermont law allowed a person with a life suspension to apply for reinstatement of the suspended license following "three years of total abstinence from consumption of alcohol or drugs, or both."  On a showing that the applicant (1) had so abstained, (2) had completed a required therapy program, and (3) "appreciates that he or she cannot drink any amount of alcohol and drive safely," the DMV was required to reinstate the person's license.  Mr. O'Connor eventually applied for reinstatement under these provisions.  Though a DMV investigator was not entirely persuaded that Mr. O'Connor had met the abstinence requirement, following a hearing, an AOT hearing examiner determined that he had satisfied the evidentiary standard on that point.  The hearing examiner made the other requisite findings and reinstated Mr. O'Connor's license.

Upon doing so, the hearing examiner imposed a condition: "Pursuant to Section 1209a(b), Petitioner's reinstatement is conditioned upon Petitioner's continued and permanent *total* abstinence from the consumption of alcohol and drugs.  In the event that the Commissioner finds that Petitioner has not maintained total abstinence, Petitioner's suspension shall be reissued for the period of its original term [i.e.,

Order
27-1-21 Wncv O'Connor vs. State of Vermont

life]." AOT hearing examiner decision dated August 7, 2009. Having successfully persuaded the DMV to reinstate his license, Mr. O'Connor did not appeal.

Nothing in § 1209a(b) or related statutes at the time said anything about such a condition. The hearing examiner's decision, however, also includes this:

> On May 23, 2007, pursuant to the Commissioner's authority under 23 V.S.A. § 1209a(b), the Commissioner of Motor Vehicles determined that all future total abstinence reinstatements "shall be conditioned upon the person's continued and permanent *total* abstinence from the consumption of alcohol or drugs. In the event that it is found that total abstinence has not been maintained, the suspension shall be reissued for the period of its original term."

*Id*. at 4, Findings ¶ 17. There is no indication in the record that this policy was a formal exercise of administrative power, such as a duly adopted rule following notice and comment procedures.

In 2019, a DMV investigator conducted an investigation and determined that Mr. O'Connor had not remained completely abstinent from alcohol in breach of the total abstinence condition, and his life suspension was reimposed. Mr. O'Connor sought administrative review and, following a hearing, an AOT hearing examiner found that he had not remained totally abstinent and affirmed the reimposition of his life suspension. Disputing that determination, Mr. O'Connor then sought review here.

There has never been any allegation or evidence, much less a finding, to the effect that Mr. O'Connor has operated or attempted to operate any vehicle after consuming any alcohol since reinstatement.

Mr. O'Connor argues that the total abstinence condition imposed at the time of reinstatement was invalid because it violated 23 V.S.A. § 1209a(b) and thus is unenforceable. The State argues that the condition was authorized by statute then as now, and Mr. O'Connor cannot collaterally attack it because he failed to appeal when it was imposed.

Both parties and the court agree that the version of 23 V.S.A. § 1209a that applies in this case is the one that existed between the 2007 and 2009 amendments. 2007, No. 76, § 16; 2009, No. 23, § 1. That version, in relevant part, is as follows:

> Notwithstanding any other provision of this subchapter, a person whose license has been suspended for three years or more under this subchapter may apply to the driver rehabilitation school director and to the commissioner for reinstatement of his or her driving

Order
27-1-21 Wncv O'Connor vs. State of Vermont

Page 2 of 8

privilege.  In the case of a suspension for three years, the person shall have completed two years of total abstinence from consumption of alcohol or drugs, or both.  In the case of a suspension for life, the person shall have completed three years of total abstinence from consumption of alcohol or drugs, or both.  In both cases, the beginning date for the period of abstinence shall be no sooner than the effective date of the suspension from which the person is requesting reinstatement and shall not include any period during which the person is serving a sentence of incarceration to include furlough.  If the commissioner, or a medical review board convened by the commissioner, is satisfied by a preponderance of the evidence that the applicant has abstained for the required number of years immediately preceding the application and hearing, has successfully completed a therapy program as required under this section and the person appreciates that he or she cannot drink any amount of alcohol and drive safely, the person's license shall be reinstated immediately upon such conditions as the commissioner may impose. If after notice and hearing the commissioner later finds that the person was operating, attempting to operate or in actual physical control of a vehicle while the person's alcohol concentration was 0.02 or more following reinstatement under this subsection, the person's operating license or privilege to operate shall be immediately suspended for the period of the original suspension.  A person shall be eligible for reinstatement under this section only once following a suspension for life.

23 V.S.A. § 1209a(b) (2008).

*Validity of total abstinence condition*

As relevant here, there are three key components to the statute.  First, it requires an adequate showing of "total abstinence," among other things, prior to reinstatement.  There is no dispute in this case that "total" means everywhere and always, regardless of operation or attempted operation of a vehicle.  Second, on such a showing, "the person's license shall be reinstated immediately upon such conditions as the commissioner may impose."  There is no dispute that the statutory regime is completely silent as to what any such conditions ought to be.  And third, if the person is later found to have been "operating, attempting to operate or in actual physical control of a vehicle while the person's alcohol concentration was 0.02 or more following reinstatement under this subsection, the person's operating license or privilege to operate shall be immediately suspended for the period of the original suspension."

Thus, on its face, it appears to require abstinence to support reinstatement, and it then subjects the reinstated driver to a more than normally restrictive blood–alcohol concentration (BAC) limit in the event of any subsequent operation or attempted operation after consumption for re-suspension purposes.  The statute evinces no intent to police such an operator's private life after reinstatement with regard to the consumption of alcohol or drugs but for as that consumption relates to operation.

The State argues that the *plain meaning* of "upon such conditions as the commissioner may impose" permits the total abstinence condition imposed in this case.  It further argues that the portion of the statute

Order
27-1-21 Wncv O'Connor vs. State of Vermont

Page 3 of 8

requiring operation or control with a BAC of .02 to warrant reimposition of the prior suspension merely sets a uniform maximum BAC condition on reimposition that applies in all cases, leaving the Commissioner free to set a more stringent BAC *or other condition*, implying that the legislature was concerned that the Commissioner otherwise might have reinstated a license and imposed an intolerably libertine BAC condition.

The State's argument that the meaning of this statute is plain on its face, and thus must be enforced according to that plain language, is circular and chimerical. The meaning of the Commissioner's authority to issue conditions in this statute is far from "plain" because it is a completely standardless delegation of unrestrained authority and thus is maximally vague, and the Commissioner has exercised that unlimited discretion to render part of the express language of the statute pointless. See *Chittenden County Sheriff's Dept. v. Dept. of Lab.*, 2020 VT 4, ¶ 16, 211 Vt. 377 ("To withstand the charge of unconstitutional delegation of legislative power, the statute must establish reasonable standards to govern the achievement of its purpose and the execution of the power which it confers."). In so many words the State admits this. See State's Memorandum in Opposition at 12 ("Although the plain language of the statute places no express constraints on the Commissioner's discretion, such discretion admittedly cannot be limitless."). There is no telling from the face of § 1209a(b) or the statutory scheme more generally, however, what sort of conditions the legislature may have had in mind. However, that it did not intend a condition that completely undermined an issue it had spoken to directly—the standard for reimposition of suspension—is clear enough on the face of the statute and still more so when viewed in historical context.

As relevant here, the obligation to reinstate a suspended license dates to 1981. The law in 1981 included various suspension lengths and various opportunities for reinstatements, including for a life suspension (then only imposed on a fourth conviction). It generally provided that reinstatements would be "upon such conditions as the commissioner may impose" without providing guidance as to any such conditions. 1981, No. 103, §§ 6, 8. It included no process whatsoever for reimposing the prior suspension of a subsequently reinstated license, and it thus did not contemplate any condition setting a controlling standard for such a process, including for abstinence reinstatements. See 23 V.S.A. § 1208(g) (1981).[1] Instead, a reinstated license was simply reinstated, and the operator was subject to the generally applicable DUI laws and thus may suffer a new suspension in the event of any new violation of 23 V.S.A. § 1201.

In 1989, the legislature added a process and standard applicable to the reimposition of a prior suspension. 1989, No. 63, § 6. It provided:

> If after notice and hearing the commissioner later finds that the person was operating, attempting to operate or in actual physical control of a vehicle *while there was any amount of alcohol in the blood following reinstatement* under this subsection, the person's operating license or privilege to operate shall be immediately suspended for the period of the original suspension.

---

[1] This is true of the prior regime as well. V.S. 1947, § 10,288.

Order

27-1-21 Wncv O'Connor vs. State of Vermont

23 V.S.A. § 1209a(b) (1989) (emphasis added).  Thus, in 1989 an ordinary reinstated operator became subject to a re-suspension process contingent on a .00 BAC standard pursuant to § 1209a(b) rather than the generally applicable .10 BAC under § 1201(a)(1) (1989) for any new suspension.

In 2004, the legislature modified this language to subject reinstated operators to a .02 BAC:

If after notice and hearing the commissioner later finds that the person was operating, attempting to operate or in actual physical control of a vehicle *while the person's alcohol concentration was 0.02 or more following reinstatement* under this subsection, the person's operating license or privilege to operate shall be immediately suspended for the period of the original suspension.

2004, No. 107, § 7; 23 V.S.A. § 1209a(b) (2004) (emphasis added).  By then, the generally applicable BAC for DUI purposes had dropped to .08.

It was not until 2009 that the legislature reversed course, deleted the .02 reimposition standard, and imposed an express total abstinence condition on all reinstatements disconnected from operation.  2009, No. 23, § 1.  Although Act 23 is labeled "An act relating to clarifying the procedure for reinstatement of a driver's license based on total abstinence from alcohol and drugs," and it does clarify procedure, it also clearly changes the substantive reimposition standard of its precursor.  As noted, this 2009 amendment does not apply in this case, and the State does not argue that it applies retroactively.

The State asks the court to defer to the Commissioner's interpretation of his authority to issue conditions under the 2004 version of § 1209a applicable here.  Generally, the court will defer to an agency's reasonable interpretation of a statute that it implements when the legislature left an ambiguity in the statutory language that the agency has the power to resolve.  However, "[i]f a court, employing traditional tools of statutory construction, ascertains that [the legislature] had an intention on the precise question at issue, that intention is the law and must be given effect."  *Levine v. Wyeth*, 2006 VT 107, ¶ 31, 183 Vt. 76 (2009).  This is the case here.  The "authority in an administrative department cannot arise through implication.  An explicit grant of authority is required."  *Miner v. Chater*, 137 Vt. 330, 333 (1979).

The State, in effect, is urging the court to allow the Commissioner to employ a standardless delegation of authority to impose conditions, which it admits purports to give the Commissioner unlimited discretion, to ignore and replace statutory language specifically addressing the subject matter at issue—the standard for reimposition of a suspension.  No legitimate principle of administrative deference countenances such a usurpation of legislative power by an agency.  Rather, the statute and legislative history are clear that in 1981 the statutory regime did not contemplate reimpositions of prior suspensions at all.  In 1989, reimposition was required upon operation after consumption of "any amount" of alcohol, a .00 BAC.  And in the 2004 version applicable here, reimposition was liberalized up to a .02 BAC.  The "total abstinence" condition imposed

Order
27-1-21 Wncv O'Connor vs. State of Vermont

Page 5 of 8

here—insofar as it was used here to supersede the .02 BAC reimposition standard—squarely violated § 1209a(b). The State's argument that the condition was a reasonable exercise the of the Commissioner's unlimited authority misses the point. Regardless of reasonableness, the authority never existed. To the extent that the delegation of authority successfully gave the Commissioner any authority to issue conditions, those conditions had to be consistent with the statute's express requirements.

The 2009 hearing examiner had no authority to impose the total abstinence condition and doing so was an invalid and arbitrary abuse of power.

*Whether the condition may be collaterally attacked now*

An administrative adjudication that was sufficiently judicial in nature and offered a sufficient opportunity to litigate can have res judicata effect and thus not be subject to collateral attack. However, for good reason, "res judicata does not apply to administrative proceedings as an inflexible rule of law" as it typically does with the judgments of courts. *Application of Carrier*, 155 Vt. 152, 157 (1990); accord *Chilton-Belloni v. Angle for City of Staunton*, 806 S.E.2d 129, 134 (Va. 2017) ("Res judicata of administrative decisions is not encrusted with the rigid finality that characterizes the precept in judicial proceedings." (citation omitted)); *Application of N. States Power Co.*, 440 N.W.2d 138, 142 (Minn. Ct. App. 1989) ("[A]dministrative res judicata 'must be tempered by fairness and equity.'" (citation omitted)); 2 Admin. L. & Prac. § 5:87 (3d ed.) ("Res judicata does not apply to administrative decisions with the rigidity that characterizes judicial proceedings."). For several reasons, the court believes that the hearing examiner's 2009 decision is properly subject to collateral attack now.

Regarding the judicial nature of the proceeding, the Vermont Supreme Court has adopted Restatement (Second) of Judgments § 83. See *Delozier v. State*, 160 Vt. 426, 429 (1993). Section 83 describes the "essential elements of adjudication" as follows:

(a) Adequate notice to persons who are to be bound by the adjudication, as stated in § 2;

(b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;

(c) A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;

(d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and

(e) Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must

Order
27-1-21 Wncv O'Connor vs. State of Vermont

Page 6 of 8

be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

Restatement (Second) of Judgments § 83(2).

The hearing examiner in the decision on appeal took pains to emphasize that Mr. O'Connor was repeatedly told of the total abstinence condition before, during, and after his reinstatement hearing. The issue clearly was presented to Mr. O'Connor, who was pro se at the reinstatement hearing, as a statutorily required *inevitability*, a natural component of the thing he was applying for. It was not presented as something discretionary that was requested by an adversary, and the need for it and its breadth were not open for debate at the hearing.

The hearing examiner then in fact gave Mr. O'Connor the reinstatement that he sought. He did so without notifying Mr. O'Connor, either in the reinstatement decision or the cover letter attached to it, that he could appeal. It is manifestly reasonable in these circumstances that a person in Mr. O'Connor's circumstances, having been given the very thing he was applying for and having been led to believe that part of what he was applying for in fact was the total abstinence condition, would perceive no interest in appealing generally and specifically would have had no fair chance of understanding that he could have appealed solely to challenge the total abstinence condition without otherwise disturbing the rest of the Commissioner's decision. The constant emphasis on the inevitability of the total abstinence condition essentially removed the condition from the scope of the hearing and would have seduced any ordinary person into failing to appeal. Under subsections (b), (c), and (e), the proceeding did not give Mr. O'Connor a fair opportunity to litigate the issue of the condition, whether at the hearing or on appeal.

Even if Mr. O'Connor had tried to raise the issue, it is not clear that the hearing examiner would have been prepared to adjudicate that issue. "The policies favoring finality over validity presuppose that fair opportunity [was] available to contest subject matter jurisdiction" in the earlier tribunal and that the decisionmaker was capable of deciding such an issue "on an adequately informed basis." Restatement (Second) of Judgments § 12 cmt. e. There is little in the record to indicate that the hearing examiner in this case had appropriate legal training to make such a decision or that he would have perceived his role to encompass making a neutral decision on the matter. He merely imposed the condition as a matter of policy on a dubious basis, the Commissioner's standardless authority to impose conditions.

Compounding all this is that there apparently were no procedural rules for the hearing at all and little indication that the hearing examiner did anything to help facilitate a fair presentation of the issues. By statute, the procedural protections required in most other types of contested cases "shall not apply to any and all acts, decisions, findings, or determinations by the Commissioner of Motor Vehicles or his or her duly authorized agents or to any and all procedures or hearings before and by him or her, or his or her agents." 3 V.S.A. § 816(b). Nothing in the record indicates that Mr. O'Connor's hearing was operated according to any clear set of procedures of which he may have been informed in advance at all.

Order
27-1-21 Wncv O'Connor vs. State of Vermont

Page 7 of 8

The court also recognizes that the imposition of the total abstinence condition was clearly unauthorized by statute and was ultra vires—entirely invalid when issued. The U.S. Supreme Court has explained:

> A court's power to decide a case is independent of whether its decision is correct, which is why even an erroneous judgment is entitled to res judicata effect. Put differently, a jurisdictionally proper but substantively incorrect judicial decision is not ultra vires.

> That is not so for agencies charged with administering congressional statutes. Both their power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires. Because the question—whether framed as an incorrect application of agency authority or an assertion of authority not conferred—is always whether the agency has gone beyond what Congress has permitted it to do, there is no principled basis for carving out some arbitrary subset of such claims as "jurisdictional."

*City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 297–98 (2013). In this case, the Commissioner had no authority to impose the total abstinence condition and doing so was not merely collateral to or consistent with the statutory regime. Instead, it squarely undermined an issue the legislature had spoken to expressly.

The hearing officer's imposition of the total abstinence condition in this case was a manifest abuse of authority and subject to collateral attack. See Restatement (Second) of Judgments § 12(1). It is unnecessary to address the other issues raised by the parties.

Order

For the foregoing reasons, the hearing officer's decision is reversed. This case is remanded to the Commissioner to return Mr. O'Connor's driver's license to reinstated status.

Robert R. Bent,
Judge

Order
27-1-21 Wncv O'Connor vs. State of Vermont

Page 8 of 8